ERIE INSURANCE COMPANY EXCHANGE, ET AL.

V.

CONNIE W. JONES, ADMINISTRATRIX, ET AL.

Record No. 931692

September 16, 1994

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell and Keenan, JJ., and Poff, Senior Justice

*John T. Cook (John R. Alford, Jr.; Caskie & Frost*, on briefs), for appellants.

*Sherwood S. Day (Thomas W. Current; Day & Current*, on brief), for appellee Connie W. Jones, Administratrix, etc.

No brief or argument for appellee Michael Randall Banks.

SENIOR JUSTICE POFF delivered the opinion of the Court.

We awarded this appeal to consider whether the trial court erred in ruling that two automobile liability insurance companies are contractually bound to provide uninsured motorist (UM) coverage in a wrongful death tort action.

The trial court based its decision upon a stipulation of facts and upon six exhibits, including a transcript of the trial of a criminal conviction related to the death, all of which are parts of the record before us. The record shows that Ronnie Dale Tyree (Tyree), his wife, Lisa Tyree, and their young son were en route to a fastfood restaurant in a truck owned by Paul A. McNeil and Lisa's mother, Carol D. McNeil. It is unclear from the record who was driving the truck when it stopped at a controlled intersection of two public roads.

Following closely behind the truck was an automobile owned by Patsy J. Banks and driven by Michael Randall Banks. With its

headlights repeatedly raised and lowered, the car came to a sudden stop immediately behind and possibly in physical contact with the truck. Tyree got out of the truck and, while standing on the driver's side, removed a rifle stored behind the seat and walked back to the car. As he was tapping the barrel of the rifle on the window, the rifle discharged. Shattered glass struck and injured Michael Banks, and two fragments of the bullet struck and killed Jill Marie West (West), a passenger in the back seat of the car.

Tyree was tried and convicted of involuntary manslaughter. Connie West Jones, West's mother and administratrix of her estate (Jones), filed a wrongful death action against Tyree.

The car in which West was riding was insured by Erie Insurance Company Exchange (Erie). Nationwide Mutual Insurance Company (Nationwide) maintained a motor vehicle insurance policy on a vehicle owned by West's mother. West was an insured person under both policies. Although the McNeils maintained an insurance policy on their truck, they failed to give their insurer the notice required by the policy and, for purposes of the wrongful death claim, the truck became an uninsured motor vehicle.

Erie and Nationwide, served with process under Code § 38.2-2206(F), filed a petition for declaratory judgment against Jones and Michael Banks. The insurers asked the court to declare that their policies did not afford uninsured or underinsured motorist coverage to West or to Banks.

Jones filed a response. Banks did not make an appearance. In a final order entered August 23, 1993, the trial court ruled that the wrongful death arose out of the ownership, maintenance, or use of the truck and that the two liability insurance policies "afford . . . [UM] coverage . . . as a result of the accident." We awarded the insurers a joint appeal.

The single issue framed on appeal is whether the insurance carriers are bound by their contracts to provide UM coverage in the pending tort action. We look first to the language of the policies. In the Nationwide contract, the insurer agreed to pay its insured damages "caused by accident arising out of the ownership, maintenance or use of [an] uninsured motor vehicle." The Erie contract contained a substantially equivalent covenant.

In defense of the trial court's ruling, Jones argues on brief that "[t]his entire accident centered around two vehicles and clearly they were being used by both Tyree and Jill West at the time of this accident." "Both of these vehicles were in use," she says, and

consequently she reasons that the "accident and death arose out of the use of a motor vehicle."

■ The ownership, maintenance, and use of the car in which West was riding as a passenger is immaterial to our inquiry; that car was an insured motor vehicle. Applying the express language of the insurance contracts to the facts of record in this case, we must determine whether, as the trial court ruled, the wrongful death was caused by an accident that arose out of the use of the *uninsured* truck in which Tyree had been riding.

■ Our decision is governed by the several principles defined in *State Farm Mutual v. Powell*, 227 Va. 492, 318 S.E.2d 393 (1984). *Powell* was a case in which we were required to determine whether an insurer was contractually obligated under the primary liability provisions of its policy to provide coverage in a wrongful death action. There, the decedent, while standing beside the insured pickup truck, was killed by an accidental discharge of a shotgun stored in a gun rack installed in the insured vehicle. The principal question underlying the issues at trial was whether the accidental death arose out of the use of that vehicle.

Reversing a judgment against the insurer, we said:

> Certain basic concepts uniformly are applied to the 'ownership, maintenance, or use' provisions of automobile liability policies. These precepts are consistent with the principles applicable to insurance contracts generally. For example, consideration must be given to the intention of the parties to the insurance agreement in determining the scope of the coverage afforded. In addition, the 'ownership, maintenance, or use' provision should be construed in the light of the subject matter with which the parties are dealing; the terms of the policy should be given their natural and ordinary meaning. Even though ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense, nevertheless, there must be a causal relationship between the accident and employment of the insured motor vehicle as a vehicle. Furthermore, consideration must be given to what the injured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such position in relation to the vehicle to be injured in its 'use.'

*Id.* at 500-501, 318 S.E.2d at 397 (citations omitted).

██ Acknowledging these principles, Jones nonetheless argues that the wrongful death "would not have happened *but for* the operation or use of two motor vehicles on a public highway" (emphasis added). The Supreme Court of Ohio rejected a similar argument in *Kish v. Central Nat. Ins. Group of Omaha*, 424 N.E.2d 288 (Ohio 1981). There, the driver of an insured automobile, stopped on a public road by a traffic signal, was struck from the rear by an uninsured vehicle. When the two drivers got out of their cars to confer, the driver of the uninsured vehicle shot and killed the driver of the insured car. The insurers refused UM coverage, and in a suit filed by the decedent's administratrix, summary judgment was entered for the insurers. On appeal, the plaintiff relied upon "a chain of events theory of causality to the effect that 'it was the rear end collision - and only that collision - that triggered and set into motion the series of events but for which Mr. Kish would be alive today.' " *Id.* at 294. Affirming the judgment, the court held:

> A "but for" analysis is inappropriate to determine whether recovery should be allowed under uninsured motorist provisions of the [policies]. The relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle. The application of this standard to the instant facts leads us to conclude that the intentional, criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle.

*Id.*; *accord Detroit Auto. Inter-Ins. Ex. v. Higginbotham*, 290 N.W.2d 414, 419 (Mich. App. 1980) ("Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle."); *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir. 1985) (fatal shooting following two-car collision was "an act wholly independent of the use of the [uninsured] truck"); *State Farm Mut. Auto. Ins. v. Fernandez*, 767 F.2d 1299 (9th Cir. 1985) (criminal assault with knife breaks causal connection between use of uninsured vehicle and injury); *Day v. State Farm Mut. Ins. Co.*, 396 A.2d 3 (Pa. Super. 1978) (injuries resulting

from fistfight following two-car collision did not arise out of use of uninsured motor vehicle).

■ Jones contends that our opinion in *State Farm Mut. Auto. Ins. Co. v. Rice*, 239 Va. 646, 391 S.E.2d 71 (1990), controls the issue in this case. We disagree. There, Rice and his companion, Vest, drove together in an insured Jeep vehicle to a hunting site. While Rice was standing outside the Jeep, Vest removed a rifle from its case, loaded it, and laid it on the seat. As he was removing the rifle from the vehicle, it discharged, and the bullet struck and injured Rice. Applying the principles expounded in *Powell*, We found that

> a sufficient nexus existed between Rice, who was a passenger in the Jeep, and the Jeep itself, which had transported the men and their equipment to the hunting site. Vest had not completed his use of the Jeep when the rifle discharged.
> We conclude that the requisite causal relationship between the accident and employment of the Jeep as a vehicle for imposition of coverage on the automobile carrier exists.

*Id.* at 650, 391 S.E.2d at 73. Here, West, a passenger in the insured vehicle, had no nexus whatever with the uninsured vehicle, and the rifle Tyree used had no connection with the use to which the uninsured truck was being put.

Jones also cites *Colonial Insurance v. Rainey*, 237 Va. 270, 377 S.E.2d 393 (1989). *Rainey* is factually dissimilar to and legally distinguishable from *Powell* and the case at bar. In *Rainey*, a passenger in an insured vehicle was injured by the negligent handling of a spare tire intended for use as a replacement of a "blow-out" sustained by an uninsured vehicle. Applying the principles defined in *Powell*, we upheld a judgment against the UM insurer on the ground that the accident arose out of the *maintenance* (not the use) of the uninsured vehicle.

■ As we said in *Powell*, "consideration must be given to the intention of the parties to the insurance agreement in determining the scope of the coverage afforded." 227 Va. at 500, 318 S.E.2d at 397; *accord U.S.F. & G. Co. v. Hartford*, 209 Va. 552, 560, 165 S.E.2d 404, 410 (1969). Automobile insurance policies are contracts. The named insured pays consideration for the insurer's covenant to compensate victims for vehicle-caused property losses, personal injuries, and death. Such damages are not vehicle-caused

when the proximate cause is merely incidental or tangential to the ownership, maintenance, or use of the vehicle.

■ Here, the proximate cause of the wrongful death was a criminal assault, one related to the use of an uninsured motor vehicle only by a chronological sequence of events. Such a risk was never one within the intendment of the parties to these insurance contracts.

We hold, therefore, that the trial court erred in ruling that the insurers were contractually bound to provide UM coverage in the wrongful death claim. We will reverse and vacate the judgment and enter final judgment for Erie and Nationwide.

*Reversed and final judgment.*