## CIRCUIT COURT OF THE CITY OF RICHMOND

Sylvester A. Hartfield, Jr.

v.

Liberty Mutual Ins. Co. et al.

### Case No. LS-4038-1

BY JUDGE MELVIN R. HUGHES, JR.

### February 28, 1995

This matter came to be heard on October 18, 1994, on defendants' motions to reconsider and vacate this court's previous holding that plaintiff's injury arose out of the "use" of a John Doe vehicle. Defendant relies on the recent Virginia Supreme Court decision, *Erie Ins. Co. Exchange v. Jones*, 248 Va. 437 (1994), as authority for vacating the original judgment. Upon review of the memoranda and case law, I find no reason to depart from the original ruling.

The holding in *Erie Ins. Co. Exchange* stands for the proposition that a determination that the "use" of an uninsured vehicle was the cause in fact of an injury is insufficient to implicate UM coverage. Such damages are not vehicle-caused when the proximate cause is merely incidental or tangential to the ownership, maintenance, or use of the vehicle. *Id.* at 442-443.

The facts here are distinguishable from those in *Erie Insurance,* such that even though use of the vehicle may not have been the proximate cause of the injury in the strict legal sense, there was a causal relationship between the accident and employment of the motor vehicle as a vehicle. *State Farm Mutual v. Powell*, 227 Va. 492, 500-501 (1984). As empha-

sized previously, the vehicle was the instrumentality through and by which the shooting occurred. *State Farm Mut. Auto. Ins. Co. v. Rice,* 239 Va. 646 (1940). The proximate cause of plaintiff's injury is neither incidental nor tangential to the use of the vehicle; rather a sufficient nexus exists between the accident and the employment of the motor vehicle as a vehicle because it was the accessory for inflicting the injury. *Rice* at 650.

The facts of *Erie Insurance* unlike those in *Rice* and those here fail to supply the sufficient nexus between the accident and the employment of the motor vehicle. As the Supreme Court noted in *Erie Insurance,* the injured passenger had no nexus with the uninsured vehicle and the rifle used had no connection with the use of the uninsured truck. Because *Hartfield* is consistent with the standards of *Powell* and *Rice,* and factually distinct from *Erie Insurance,* the earlier ruling will not be disturbed.

Accordingly, the motion to vacate is overruled.

May 24, 1995

This is a declaratory judgment action wherein the plaintiff seeks a determination of his rights and several defendants' obligations under automobile insurance contracts. Plaintiff was severely injured by a gunshot while riding in a rented vehicle. The shot came from an unknown vehicle also travelling the highway.

Plaintiff has filed two motions for partial summary judgment against Liberty Mutual, one of the defendants in this action. Liberty Mutual issued policies providing liability and extended coverage (the umbrella policy) to Ford Motor Company, the owner of the rental car agency that leased the vehicle plaintiff was travelling in at the time. The motions raise questions regarding uninsured motorist coverage and the extent of such coverage, if afforded.

The first question is whether Liberty Mutual's umbrella policy included uninsured motorist coverage. Liberty Mutual has admitted that it has liability coverage in an underlying policy in the amount of $100,000.00. At the time plaintiff was shot there was also in force an umbrella policy issued by Liberty Mutual. Plaintiff relies on the "Conditions" portion and the "Definition of Insured" provisions of the policy in advancing that he is entitled to uninsured coverage under the umbrella policy which policy limit is $5,000,000.00.

The "Conditions" portion of the Liberty Mutual policy reads:

I. *Provisions of Underlying Policy.* This policy and the insurance offered by this policy shall be subject to all of the terms and

provision of the underlying policies other than "Who is an Insured" or "Persons Insured Provision" of each such policy, except as such term and provisions are inconsistent with this policy.

Although admitting that the law does not require Liberty Mutual to provide uninsured coverage in an umbrella, plaintiff contends that Liberty Mutual's policy provides this broader coverage, nonetheless. Plaintiff relies heavily on the language in the conditions portion just quoted, "all the terms and provisions of the underlying policies, other than 'who is an insured' or 'persons insured provision'," as extending the uninsured motorist coverage to the limits of the policy. In essence, plaintiff argues that due to this language the umbrella policy affords uninsured motorist coverage just as the liability coverage does. The court does not agree with this assessment.

First, the very language in the conditions provision plaintiff relies on as incorporating all the terms and conditions of the underlying policy preclude plaintiff because by its terms it incorporates everything "other than 'who is an insured' or 'persons insured provision' of each such policy," meaning the underlying liability policy. Plaintiff argues that since this "other than" clause does not mention the uninsured motorist endorsement to the underlying policy, the umbrella policy incorporates the uninsured motorist part of that policy. This is an unduly restrictive view when other provisions are considered.

Other provisions in the umbrella policy exclude uninsured motorist coverage and deny coverage to plaintiff as an insured. "Insureds" under the umbrella are defined as:

The definitions of insured in any and all underlying policies shall not apply to this policy and, for purposes of this policy, the unqualified word insured shall mean:
(1) Ford Motor Company, any Franchised Dealer of Ford Motor Company, and any wholly owned or controlled subsidiary of such Franchised Dealer.
(2) Ford Rent-A-Car System.
(3) Lincoln Mercury Rent-A-Car System.

This language is clear enough to not include plaintiff as an insured. This part of the policy does not evince an intent to extend uninsured motorist coverage under the umbrella. Nor does the law require it, as plaintiff concedes.

Moreover, there is nothing in the umbrella showing that the policy means to provide uninsured motorist coverage. The policy insures the three entities listed as "insureds" for any damages any of them may be called on to pay other persons, not for damages due them from and caused by an uninsured person.

Next, there is the issue of whether Ford validly rejected uninsured motorist coverage equal to liability limits given in the underlying policy according to law. In other words plaintiff contends that the amount of uninsured motorist coverage is $100,000.00 the same policy limit set for liability coverage under that policy.

Under law according to § 32.2-2206(A) the limits of uninsured motorist coverage:

> shall be equal but not exceed the limits of liability insurance provided by the policy, unless the insured rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection B of § 38.2-2202.

Under § 38.2-2202(B):

> No new policy or original premium notice of insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered unless it contains the following statement printed in boldface type or unless the statement is attached to the front of or is enclosed with the policy or premium notice:
>
> Important Notice
>
> In addition to the insurance coverage required by law to protect you against a loss caused by an uninsured motorist,
> If you have purchased liability insurance coverage that is higher than that required by law to protect you against liability arising out of the ownership, maintenance, or use of the motor vehicles covered by this policy, and you have not already purchased uninsured motorist insurance coverage equal to your liability insurance coverage;
> 1. Your uninsured and underinsured motorist insurance coverage has increased to the limits of your liability coverage and this increase will cost you an extra premium charge; and
> 2. Your total premium charge for your motor vehicle insurance coverage will increase if you do not notify your agent or insurer

of your desire to reduce coverage within 20 days of the mailing
of the policy of the premium notice, as the case may be.
3. If this is a new policy and you have already signed a written
rejection of such higher limits in connection with it, paragraphs
1 and 2 of this notice do not apply.

Here, plaintiff contends that Liberty Mutual failed to comply with this statutory requirement and the insured, Ford, did not explicitly reject the policy limit thus making the uninsured coverage limit equal to the liability limit, $100,000.00. Liberty Mutual on the other hand contends that Ford rejected the policy limits for uninsured motorist coverage and selected the statutory minimum limits for such coverage.

Plaintiff relies on a form completed by a Ford company official and sent to Liberty Mutual. The body of the form starts with this statement: "I wish to *elect* Uninsured/Underinsured Motorist Coverage at" (emphasis added). Then below are six categories of policy limits. Beside each is a box for checking. There is an "x" in the box beside "Financial Responsibility Limits." The boxes beside the other policy limits options listed are not checked. Plaintiff contends that Liberty Mutual permitted an *election* to be made by the insured without the benefit of the "Important Notice" required by § 38.2-2202(B) and without a rejection of coverage equal to the liability limits. Plaintiff says the election cannot be a substitute for a *rejection* mandated by § 38.2-2202(B) following a notice under the statute.

Plaintiff cites two federal cases, which applying Virginia law, held that the insured's action were not effective to constitute the required rejection under B of § 38.2-2202. In *White v. National Union Fire Ins. Co.*, 913 F.2d 165 (4th Cir. 1990), the court found that there had been no rejection when a form which rejected uninsured motorist coverage and selecting minimum coverage in 39 other states where possible failed to note any of the options for coverage listed concerning Virginia. In *Bray v. Ins. Co. of Penn.*, 917 F.2d 130 (4th Cir. 1990), there was evidence that the insurer issued a liability policy with $1,000,000.00 liability limits but only $15,000/$30,000 uninsured limits and that this was all that was done. The court found that the insurer did not give the insured notice of its options under Virginia law nor did the insured advise the insurer that it rejected uninsured motorist coverage equal to its liability coverage.

Both *White* and *Bray* apply rules announced in Virginia cases governing construction of Virginia uninsured motorists statutes. By citing these cases plaintiff seeks to show that § 38.2-2206(A) must be read and has been interpreted literally, to mean that a specific rejection not an election is

required such that the "election" in this case is not valid. Here there is no evidence that the insured was ever notified of its rights to reject equal uninsured motorist coverage and failing a rejection that coverage would be equal automatically. Without information of its rights in the premises, Ford, the insured, could have been operating on the assumption that it was merely being presented with choices. Under the facts here, a rejection is not implicit in the electing as Liberty Mutual argues, because, by itself, Ford cannot be said to be informed that it must expressly reject the equal limits for uninsured motorist coverage or else those limits would attach by operation of law.

Liberty Mutual cites *USAA Cas. Ins. Co. v. Alexander,* 248 Va. 185 (1994). There the Supreme Court held an earlier specific rejection of equal uninsured motorist coverage limits was still effective even though the insured failed to return a waiver form on later renewals of the policy. This case is not helpful to Liberty Mutual here because as stated there is no evidence that Ford ever got the required notice of rights in the matter under § 38.2202(B). Thus, again, there is no evidence that Ford made a specific rejection of coverage limits for uninsured motorist protection equal to liability limits.

As stated before, the facts surrounding the rental contract for the vehicle and whether plaintiff agreed to exclude or limit any coverage are fact matters not resolvable at this point by summary judgment.

For the foregoing reasons, the motions are granted and overruled.