Present:  All the Justices

TRAVELERS INSURANCE COMPANY

v.  Record No. 941863

DARYL F. LACLAIR          OPINION BY JUSTICE A. CHRISTIAN COMPTON
                                November 3, 1995

INSURANCE COMPANY OF NORTH AMERICA

v.   Record No. 941896

DARYL F. LACLAIR

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Thomas A. Fortkort, Judge

These two appeals in a declaratory judgment proceeding present a question of motor vehicle insurance coverage.  The dispositive issue is whether an intentional shooting by a person occupying an uninsured vehicle constitutes "use" of the vehicle for purposes of uninsured motorist coverage.  We answer that query in the negative, and reverse.

The facts are virtually undisputed.  On November 21, 1990, appellee Daryl F. LaClair, an Arlington County deputy sheriff, was operating his marked police vehicle on Lee Highway in Arlington County.  An automobile ahead of LaClair, driven by one Marcus Arban, was being operated erratically in the left lane.  The officer assumed the driver was lost and was attempting to read a map.

As the officer pulled alongside the automobile in the right lane, it sped in front of him, pulled into the right lane, and stopped.  The officer stopped his vehicle "four to five feet" behind Arban's automobile, followed standard procedures for

making a traffic stop, such as activating emergency lights, stepped from his vehicle, and began to approach the automobile. He was wearing leisure clothes, not his police uniform.

When Arban began to open the door on the driver's side of the automobile, the officer ordered him to remain in the vehicle. The door continued to open, and the officer again told Arban to remain in his car.

Suddenly, the officer felt a blow to his left elbow. As he turned to examine the elbow, "a second shot struck" him; the bullet grazed his head cutting through his right eyelid and exited the eyebrow. The officer dove between the automobile and his police vehicle to avoid further shots. As the Arban car began to leave the scene, the officer, partially blinded, managed to fire several shots into its rear.

The next day, the Prince William County police attempted to serve a search warrant on Arban. He resisted entry into his home. During an exchange of gunfire, Arban and a police officer were killed.

Subsequently, LaClair filed a civil action in Arlington County against Arban's personal representative seeking recovery against the estate for his personal injuries. The automobile liability insurer on Arban's vehicle denied coverage.

Appellant Travelers Insurance Company issued a policy of automobile insurance on LaClair's personal automobile. Appellant Insurance Company of North America (I.N.A.) carried the liability

insurance on the vehicles of the Arlington County Sheriff's Office.

Later, Travelers and I.N.A. sought, in the present declaratory judgment action, a ruling that they were not obligated to provide coverage to LaClair under the uninsured motorist provisions of their respective polices for the claims made in the personal injury action pending in Arlington County. As pertinent to the issue to be decided in this appeal, the respective policies obligated the insurer to pay LaClair all sums that he is legally entitled to recover as damages from the driver of an uninsured motor vehicle resulting "from the ownership, maintenance or use of" the uninsured motor vehicle.

After an evidentiary hearing in the declaratory judgment proceeding, the trial court "determined as a matter of fact that the shooting of Captain LaClair was an intentional, not an accidental act, and that Arban was still partially inside his car at the time he fired the shots at Captain LaClair." In deciding the question whether "the circumstances of this case constitute `use' of an automobile as that term is employed in the insurance policies," the trial court ruled in favor of LaClair in an August 1994 order from which these appeals were taken.

The court below opined that LaClair's "injuries were linked to the `use' of the vehicle by Arban." The court said that "Arban's vehicle, in a fundamental way, was used to facilitate the act which produced the injury to . . . LaClair. Arban used

his vehicle first to lure . . . LaClair into stopping behind him, then as a shield, from behind which the shots were fired, and finally as a swift means of escape."  The court, stating that Arban's car "was the instrumentality and the accessory" for inflicting the injuries, found that LaClair's injuries were covered under the uninsured motorist provisions of Travelers' and I.N.A.'s policies.  This was error.

We have examined the question whether an injury or death arose from the "use" of a motor vehicle in three fairly recent insurance coverage cases.  In <u>State Farm Mutual Automobile Insurance Co.</u> v. <u>Powell</u>, 227 Va. 492, 318 S.E.2d 393 (1984), we held that a death resulting from discharge of a shotgun, resting in a gun rack affixed to a pickup truck, did not arise out of "use" of the vehicle under the circumstances of that case.  We said that the truck was merely the situs for a social gathering, and was not employed for any enterprise usually associated with use of the vehicle.  <u>Id</u>. at 501, 318 S.E.2d at 398.

There, we noted certain basic concepts that are uniformly applied to the "ownership, maintenance, or use" provisions of automobile liability policies.  <u>Id</u>. at 500, 318 S.E.2d at 397. We said that these "precepts are consistent with the principles applicable to insurance contracts generally.  For example, consideration must be given to the intention of the parties to the insurance agreement in determining the scope of the coverage afforded."  <u>Id</u>.

Also, we pointed out that "the `ownership, maintenance, or use' provision should be construed in the light of the subject matter with which the parties are dealing; the terms of the policy should be given their natural and ordinary meaning."  Id.  Importantly, we said that although "ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense," nonetheless, there must be a causal relationship between the incident and the employment of the "motor vehicle as a vehicle."  Id.

In State Farm Mutual Automobile Insurance Co. v. Rice, 239 Va. 646, 391 S.E.2d 71 (1990), we applied the principles set forth in Powell and ruled that an injury caused by the accidental discharge of a rifle arose out of the "use" of the motor vehicle under the circumstances of that case.  There, two hunters were utilizing a Jeep vehicle to transport themselves, and their hunting equipment, to the site where they would embark on their hunting expedition.  While unloading the vehicle at the site, the rifle discharged injuring one hunter.  We concluded "that the requisite causal relationship between the accident and employment of the Jeep as a vehicle for imposition of coverage on the automobile carrier exists."  Id. at 650, 391 S.E.2d at 73.

And, in Erie Insurance Company Exchange v. Jones, 248 Va. 437, 448 S.E.2d 655 (1994), decided after the trial court's ruling in the present case, we applied the Powell principles and held that two automobile liability insurers were not

- 5 -

contractually bound to provide uninsured motorist coverage in a wrongful death claim because the damages were "merely incidental or tangential" to use of the truck in question, under the facts of that case. Id. at 443, 448 S.E.2d at 659. There, the operator of the uninsured truck alighted from the stopped vehicle and, with a rifle in hand, walked to the side of an automobile that had been following the truck closely with the driver repeatedly raising and lowering the headlights. While tapping the rifle barrel on the car window, the rifle discharged, killing a passenger in the car.

Applying the foregoing principles to the present facts, we hold that the employment of Arban's vehicle did not amount to a "use" of that vehicle within the meaning of the policy provisions at issue. Even though Arban may have utilized the vehicle to "lure" LeClair into stopping behind him, even though Arban was partially inside his car when the shots were fired, even though Arban employed the car as a "shield," even though the vehicle was employed to "facilitate the act which produced the injury," and even though Arban's car may have been an "accessory" to the shooting, nevertheless, none of those acts or circumstances involved the use of the Arban vehicle as a vehicle. Thus, we conclude that the requisite causal relationship between the incident and employment of the automobile as a vehicle does not exist.

Manifestly, the natural and ordinary meaning of "use" of a

private, passenger motor vehicle does not contemplate its utilization as a mobile or stationary pillbox or fortress, or as a shield, or as an outpost from which an assailant may inflict intentional injury with a firearm.

Therefore, the judgment appealed from will be reversed, and we will enter final judgment here in favor of the insurers declaring that neither owes coverage to LaClair under their respective policies.

<u>Reversed and final judgment</u>.