Present:  All the Justices


FREDDIE B. LEXIE, JR., ET AL.

v.   Record No. 950227

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY
                             OPINION BY JUSTICE A. CHRISTIAN COMPTON
                                   April 19, 1996
FREDDIE B. LEXIE, JR., EXECUTOR,
ETC.

v.   Record No. 950455

LIBERTY MUTUAL INSURANCE COMPANY


          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                      Donald H. Kent, Judge

BRIAN M. SKATES

v.   Record No. 950791

COLONIAL INSURANCE COMPANY
OF CALIFORNIA

ARNITA M. GOODE

v.   Record No. 951049

COLONIAL INSURANCE COMPANY
OF CALIFORNIA


          FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
                   John R. Snoddy, Jr., Judge


     These four consolidated appeals arise from two so-called

"drive-by shootings" involving the operation of motor vehicles.

One incident occurred in the District of Columbia and the other

in the Commonwealth in Prince Edward County.

     Each case presents a question of motor vehicle insurance

coverage.  The dispositive issue in each is whether an

intentional shooting by a person occupying an uninsured vehicle

constitutes "use" of the vehicle for purposes of uninsured motorist coverage. In one of the appeals, North Carolina law applies; in the other three, Virginia law is applicable.

The Lexie Incident

In November 1991, Patricia Dian Bigby Lexie was fatally injured in the District of Columbia in an unprovoked shooting by an occupant of an uninsured motor vehicle. At the time, she was a passenger in a vehicle operated on Interstate 295 by her husband, Freddie B. Lexie, Jr., who was also injured in the incident. The Lexies resided in the City of Alexandria; Mrs. Lexie maintained a separate residence in North Carolina.

The vehicle operated by Lexie was insured by an automobile liability policy containing uninsured motorist coverage issued in Virginia by appellee State Farm Mutual Automobile Insurance Company. At the time of the incident, another automobile liability policy with uninsured motorist coverage issued in North Carolina by appellee Liberty Mutual Insurance Company to Mrs. Lexie was in effect. As pertinent to the issue to be decided in these appeals, the respective policies obligated the insurer to pay all sums the insured was legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle arising "out of the ownership, maintenance or use of" the uninsured motor vehicle.

Subsequently, appellant Lexie, individually and as executor of his wife's estate (collectively, Lexie), made demand upon the

- 2 -

insurers for payment of benefits under the respective policies. He also filed an action for damages in federal court against the owner and operator of the vehicle in which the gunman was riding.

Later, the insurers separately filed the present actions seeking declaratory judgments that Lexie is not entitled to coverage under the respective policies. The parties agreed there were no material facts in dispute, and the insurers sought pre-trial summary judgment.

The trial court, upon consideration of the pleadings and argument of counsel, ruled in favor of State Farm, applying Virginia law, and ruled in favor of Liberty Mutual, applying North Carolina law.

Lexie appeals the November 1994 State Farm judgment individually and as executor. He appeals the December 1994 Liberty Mutual judgment in his representative capacity only. This dichotomy is irrelevant, however, because of the dispositive issue in the appeals.

<u>The Skates and Goode Incident</u>

In August 1991, appellant Brian M. Skates was operating a motor vehicle in Prince Edward County. Appellant Arnita M. Goode was among the passengers in the vehicle, which was owned by her mother. The group had been to a night club in Farmville where one Darrell Lee had been involved in an altercation with Skates. Later, Lee was riding in an uninsured motor vehicle driven by another person pursuing the Goode vehicle. As the vehicles were

abreast, Lee leaned from an open window and shot both Skates and Goode, injuring them.

At the time, the Goode vehicle was insured by an automobile liability policy containing uninsured motorist coverage issued in Virginia by appellee Colonial Insurance Company of California. As pertinent to the issue to be decided in these appeals, the policy obligated the insurer to pay Skates and Goode all sums they were legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle "arising out of the ownership, maintenance or use of such uninsured motor vehicle."

Subsequently, the insurer denied uninsured motorist claims submitted by Skates and Goode. They sought payment for their injuries based upon the conduct of the operator of the vehicle in which the assailant was riding. Later, the insurer filed the present action against Skates and Goode seeking a declaratory judgment that the claimants are not entitled to coverage under the policy.

The trial court granted the insurer's pre-trial motion for summary judgment, declaring inter alia that the injuries did not arise out of the "use" of the uninsured motor vehicle. We awarded Skates and Goode separate appeals from the March 1995 judgment order.

First, we shall address the Lexie-Liberty Mutual appeal. Generally, the nature, validity, and interpretation of automobile insurance policies, like other contracts, are governed by the law

of the place where made. Woodson v. Celina Mut. Ins. Co., 211 Va. 423, 426, 177 S.E.2d 610, 613 (1970); Lackey v. Virginia Sur. Co., 209 Va. 713, 715, 167 S.E.2d 131, 133 (1969). The Liberty Mutual policy was made in North Carolina, issued and delivered there to Mrs. Lexie covering a vehicle principally garaged in North Carolina. Thus, the trial court properly applied North Carolina law, which we shall examine to determine whether the court correctly ruled "that the firing of gunshots from one vehicle into another does not arise out of the . . . use of the vehicle."

The law of North Carolina is consistent with the law of Virginia on this subject. In North Carolina, coverage for injuries arising from the "use" of a motor vehicle requires "a causal connection between the use of the vehicle and the injury." Scales v. State Farm Mut. Auto. Ins. Co., 460 S.E.2d 201, 203 (N.C. App. 1995). "This connection is shown if the injury is the natural and reasonable consequence of the vehicle's use." Id. However, there is no coverage if the injury results from something wholly disassociated from, independent of, and remote from the vehicle's normal employment. Id. "Clearly, an automobile chase with guns blazing is not a regular and normal use of a vehicle." Id.

In sum, North Carolina law provides that injuries and death resulting from gunshots fired from a moving automobile do not constitute an accident arising from the "use" of such vehicle,

Nationwide Mutual Insurance Co. v. Knight, 237 S.E.2d 341, 344 (N.C. App.), disc. review denied, 239 S.E.2d 263 (N.C. 1977), and the trial court in the present case correctly so ruled.

Parenthetically, it should be noted that Lexie dwells on the effect upon the contract issues in this appeal of the default judgment he obtained against the operator of the assailant's vehicle in the federal tort action, to which Liberty Mutual was not a party. The findings of the federal court were not before the trial court when it ruled on the motion for summary judgment, and there was no motion filed by Lexie in the trial court based on the preclusive effect, if any, of the federal judgment. Thus, we will not entertain these questions for the first time on appeal. Rule 5:25.[*]

Next, we shall turn to the remaining three appeals, applying Virginia law. These cases are controlled by our recent decision in Travelers Insurance Co. v. LaClair, 250 Va. 368, 463 S.E.2d 461 (1995). There, the issue was precisely the same as in the present cases.

In LaClair, a deputy sheriff was injured, while standing on a public highway, by gunshots intentionally fired by the operator of an uninsured motor vehicle, who had stopped in front of the officer's police car. The assailant, partially inside his car at the time, fired as the officer approached him.

---

[*]Additionally, there is no merit to Lexie's contention that he is entitled to the benefit of the minimum coverage requirements of the District of Columbia insurance laws.

Reversing a trial court's judgment in favor of the officer, we analyzed our recent insurance coverage cases to address the question whether the injury arose from the "use" of the uninsured motor vehicle. We noted "certain basic concepts" that are uniformly applied to the question, including the rule that consideration must be given to the intention of the parties to the insurance contract in determining the scope of the coverage afforded. Id. at 371, 463 S.E.2d at 463. Importantly, we emphasized that there must be a causal relationship between the incident and the employment of the motor vehicle as a vehicle. Id. at 372, 463 S.E.2d at 463.

In LaClair, we held that the employment of the assailant's vehicle did not amount to "use" of that vehicle within the meaning of the policy provisions at issue. We said that even though the assailant may have utilized the vehicle to lure the officer into stopping behind him, even though the assailant was partially inside the car when firing the shots, even though the assailant employed the car as a shield, even though the vehicle was employed to facilitate the act producing the injury, and even though the assailant's vehicle may have been an accessory to the shooting, none of those acts or circumstances involved the use of the assailant's vehicle as a vehicle.

Thus, we concluded that the "requisite causal relationship between the incident and employment of the automobile as a vehicle does not exist." Id. at 373, 463 S.E.2d at 464. See

United States Fire Ins. Co. v. Parker, 250 Va. 374, 377-78, 463 S.E.2d 464, 466-67 (1995) (applying the same test in construing the "ownership, maintenance, or use of a motor vehicle" language of Code § 38.2-2206, the uninsured motorist statute).

Finally, in LaClair, we observed that "the natural and ordinary meaning of `use' of a private, passenger motor vehicle does not contemplate its utilization as a mobile or stationary pillbox or fortress, or as a shield, or as an outpost from which an assailant may inflict intentional injury with a firearm." LaClair, 250 Va. at 373, 463 S.E.2d at 464.

The foregoing statements from LaClair apply with equal force to these appeals controlled by Virginia law. The several claimants seek to distinguish the present cases from LaClair upon the basis that in these cases the vehicles were moving at the time of the assaults and passengers in the uninsured vehicles, not the operators, were the assailants.

These are distinctions without any difference, given the facts of these particular cases. The principal focus is upon the manner in which the vehicle, whether moving or stationary, is being employed, not upon the activity or role of any assailant who may be in, upon, or around the uninsured vehicle.

Consequently, the respective trial courts correctly ruled that the intentional shootings by persons occupying the uninsured vehicles did not constitute "use" of the vehicles for purposes of uninsured motorist coverage, and the judgments below in favor of

the respective insurers will be

<u>Affirmed</u>.