# CIRCUIT COURT OF BRUNSWICK COUNTY

Jamie G. Griffin,
a minor, who sues
by Amy Moore,
his mother
and next friend

v.

Brunswick County
Public School Board

November 14, 2008

Case No. CL07-76

BY JUDGE W. ALLAN SHARRETT

This case is before the Court on a Plea in Bar filed by Defendant Brunswick County Public School Board ("the School Board") and a Motion to Quash Service of Process subsequently filed by Erie Insurance Exchange ("Erie"). Both are in response to a Complaint filed by Jamie G. Griffin, a minor who sues by Amy Moore, his mother and next friend. The Court heard argument on both the plea and the motion in September 2008. Upon consideration of the pleadings, memoranda, and argument at the hearing, the Court now makes its rulings.

## I. *Summary of the Facts*

At all times pertinent to this action, Plaintiff, a resident of Brodnax, Virginia, was an eight year old, second grade student at Totaro Elementary School ("the School"), a public school in the Brunswick County Public School System ("the School System"). Plaintiff is a cancer survivor who has had several brain surgeries. He is a special needs student who relies upon a wheelchair for transportation. Because of his special needs, Plaintiff was assigned a bus aide, Martha Fletcher, whose duty it was to safely transport Plaintiff to and from school. This duty included, but was not limited to, remaining with Plaintiff on the bus, unloading him, and ensuring that he reached his classroom.

On March 17, 2006, Plaintiff was transported to the School on the school bus, accompanied by Fletcher. The bus driver, Murtes Hicks, stopped at the neighboring junior high school prior to stopping at the School. Fletcher got off the bus at the junior high school, leaving Plaintiff unattended. Hicks continued on to the School. Upon arrival, Hicks operated the bus's handicapped lift system and removed Plaintiff, in his wheelchair, from the school bus. Hicks left Plaintiff unattended on the sidewalk, strapped into his wheelchair, and she returned to the bus. Plaintiff's wheelchair rolled diagonally off the sidewalk, over a curb, throwing Plaintiff face first into the street at the rear of the bus. He injured his head, wrist, and cervical spine in the accident.

Plaintiff alleges that, as employees of the School System, Fletcher and Hicks each had a duty to safely transport Plaintiff to and from school on the bus. According to the Complaint, Fletcher was negligent in the performance of her duty by her failure to remain on the school bus with Plaintiff, her failure to safely unload him, and her failure to ensure that he reached his classroom. With respect to Hicks, Plaintiff alleges that she was negligent by her failure to see that Plaintiff was safely positioned on the sidewalk after removing him from the bus, by leaving him unattended, and by her failure to safely transport him to his classroom.

Plaintiff states that the School Board is directly responsible for those employees who work for the School System while performing their jobs. In addition, Plaintiff contends that the School Board, through its agents and employees, knew or should have known through the exercise of due care that Plaintiff was not to be left unattended. The School Board failed to exercise its duty of due care and was negligent in its duties. As a result, Plaintiff has suffered from permanent physical injuries, great pain, humiliation, high medical bills, interrupted physical therapy, and disruption in the conduct of his typical daily activities. Plaintiff brings suit against the School Board in an effort to recover for his damages.

## II. *Discussion*

### A. *The School Board's Plea in Bar*

In Virginia, a school board is immune from tort liability, except where that immunity has been abrogated by statute. The School Board admits that the Code of Virginia abrogates a school board's immunity for accidents involving transportation of students up to, but not beyond, the limits of valid and collectible insurance covering the bus.

> In case the locality or the school board is the owner, or operator through [the] medium of a driver, of . . . a vehicle involved in an accident, the locality or school board shall be subject to action up to, but not beyond, the limits of valid and collectible insurance in force to cover the injury complained of . . . and the defense of governmental immunity shall not be a bar to action or recovery.

Va. Code § 22.1-194 (2006).

The School Board and its employees are covered by Virginia Association of Counties Risk Management Pool insurance ("the VACO Policy"), a self-insured risk pool of Virginia counties that insured the School System for injuries incurred in the transportation of its pupils. While the School Board realizes that this statute applies to the instant case, it contends that the VACO Policy that covers the bus does not cover the circumstances alleged in the Complaint. Therefore, the School Board maintains that there is no "valid and collectible insurance in force to cover the injury complained of," so it retains its immunity.

In relevant part, the VACO Policy states: "The Fund will pay all sums the Participant [the School Board] legally must pay as damages because of Bodily Injury or Property Damage to which this coverage applies, caused by any Accident and *resulting from the ownership, maintenance, or use of a Covered Auto*." Thus, the critical inquiry in this case is whether Plaintiff's accident resulted from the School Board's use of the bus. If it did, then the School Board is liable and Plaintiff is entitled to damages under the VACO Policy.

Plaintiff argues on brief that the injuries he sustained "clearly arose from an accident resulting from the School Board's ownership, maintenance, and use of a school bus as part of the specialized transportation provided to

children with special needs." In support of this, he asserts that "the steps involved in operating a wheelchair lift system and placing a student properly on the sidewalk were all steps performed by Jamie's bus driver involved in his use of the school bus." The Court respectfully disagrees based on the existing case law and the facts of this case.

The primary test in determining whether the "ownership, maintenance, or use" provision in automobile insurance policies is satisfied comes from *State Farm Mutual Ins. Co. v. Powell*, 227 Va. 492, 318 S.E.2d 393 (1984).

> Certain basic concepts uniformly are applied to the "ownership, maintenance, or use" provisions of automobile liability policies. . . [C]onsideration must be given to the intention of the parties to the insurance agreement in determining the scope of the coverage afforded. In addition, the "ownership, maintenance, or use" provision should be construed in the light of the subject matter with which the parties are dealing; the terms of the policy should be given their ordinary meaning. Even though ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense, nevertheless, *there must be a causal relationship between the accident and employment of the insured motor vehicle as a vehicle*. Furthermore, consideration must be given to what the injured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such position in relation to the vehicle to be injured in its "use."

*Powell*, 227 Va. at 500-01, 318 S.E.2d at 397 (citations omitted; emphasis added).

In *Powell*, David C. Good drove his pickup truck to a park, accompanied by a friend. The pair met three friends at the park, including Keith Powell. Good parked his truck near another truck occupied by Powell, turned off the car, but left the key in the ignition. Good had installed a gun rack in his truck, which, on that day, contained a loaded shotgun. The three people in Powell's truck got out of the truck and came towards Good's truck. One of the three entered Good's truck and sat in the truck with Good and his companion. Initially, Powell walked to the driver-side of Good's truck to speak with Good. Then, Powell walked to the other side of the truck by the open passenger-side door. Suddenly, without explanation, the shotgun fired, killing Powell.

Powell's personal representative sought damages from Good's automobile liability insurance through State Farm Mutual Automobile Insurance Company. The policy stated that State Farm agreed to pay on Good's behalf all sums for which Good becomes legally obligated to pay as damages because of bodily injury or death arising out of the "ownership, maintenance, or use" of the insured vehicle. The Supreme Court of Virginia applied the test quoted above and found that "there [was] lacking the requisite causal relationship between the accident and employment of the truck as a vehicle for imposition of coverage on the automobile carrier." *Id.* at 503, 318 S.E.2d at 398. In doing so, the Court stated that "the truck merely was the situs for a social gathering . . . equivalent to a park bench, a picnic shelter, a tent, or a shed in that it was being employed as a gathering place for friends and not for any specific enterprise usually associated with use of a passenger, farm utility vehicle." *Id.* at 501, 318 S.E.2d at 398.

The Court also applied the *Powell* test in *State Farm Mutual Automobile Ins. Co. v. Rice*, 239 Va. 646, 391 S.E.2d 71 (1990). In *Rice*, two men, Danny Rice and Roy Vest, left to go hunting in a Jeep driven by Vest. Once they arrived at their hunting destination, Vest got out of the Jeep, reached into the back seat, and removed a rifle case that contained his rifle. While standing outside the Jeep, he unzipped the case, removed the rifle and some ammunition, placed the case back in the Jeep, and loaded the rifle. Rice got out of the Jeep around the same time as Vest and removed his rifle as well. The two men decided to go to separate areas to hunt. While both men were outside the Jeep, Rice said he was going to leave. Vest opened a bottle, drank some coffee, and then opened the Jeep's front door to put the bottle inside. He placed his loaded rifle on the driver's seat, stowed the bottle, and then picked up his rifle. At that time, the rifle discharged and struck Rice as he was walking away.

Rice sued, seeking coverage under Vest's automobile insurance coverage. The Jeep was insured under Vest's wife's name and Vest, as a permissive user, was "entitled to coverage if the accident arose out of the use of the Jeep." *Id.* at 648, 391 S.E.2d at 72. The *Rice* Court applied the *Powell* test and determined that the accident arose out of the use of the Jeep.

> At the time of the accident, Vest was in the process of placing a thermos in the Jeep and was removing his loaded rifle from the Jeep. These items which were used for the hunt were transported in the Jeep. The door on the driver's side of the Jeep was still open at the time of the accidental discharge. Even though Rice had completely alighted from the Jeep and was

> walking toward a ridge where he intended to begin his hunt, a sufficient nexus existed between Rice, who was a passenger in the Jeep, and the Jeep itself, which had transported the men and their equipment to the hunting site. Vest had not completed his use of the Jeep when the rifle discharged.

*Id.* at 649-50, 391 S.E.2d at 73.

Therefore, the requisite causal relationship existed between the accident and employment of the Jeep as a vehicle for the Court to impose coverage on the insurance company.

The Supreme Court of Virginia case of *Wagoner v. Benson*, 256 Va. 260, 505 S.E.2d 188 (1998), involves a similarly worded insurance policy. *Wagoner*, like the instant case, is against a school board that claims sovereign immunity under Va. Code § 22.1-194. In *Wagoner*, Stacy Wagoner drove her daughter Amanda to the school bus stop. She parked the car and waited for the bus. Eventually, the bus pulled up in the opposite lane from the side of the road on which Stacy was parked, turned on its warning lights, and extended its stop sign. When the bus reached a stop, Amanda got out of her mother's car and began crossing the street toward the front of the bus. Amanda was struck by a car while crossing the street and sustained serious injuries.

Amanda, by her next friend, sued the school board, seeking to recover damages from the school board's insurance company. The school board's policy stated that it would pay all sums that its insured must pay as damages caused by accidents that "arise out of the ownership, maintenance, use, loading, or unloading of an auto we insure." *Id.* at 263, 391 S.E.2d at 189. The Court found that the accident arose during the "loading" of the school bus. In so finding, the Court stated that the loading of the school bus was a function performed by the bus driver. The process involves many steps, including turning on warning lights and extending the stop sign and the safety gate, all of which remain engaged until all students are inside or have been loaded onto the school bus. Therefore, coverage was imposed on the school board's insurer.

*Wagoner* did not address whether the accident arose out of the "use" of the bus; rather, it focused on whether it arose out of "loading." Plaintiff in the instant case argues that although the VACO Policy does not contain the additional words "loading or unloading," the Supreme Court's decision would be the same under the "use" provision of the VACO Policy because "unloading" is a part of "use." Plaintiff believes that, because his accident occurred during unloading, then it must have occurred during the School Board's use of the bus. Despite Plaintiff's argument, it is apparent that the

*Wagoner* Court clearly only considered the "loading" portion of the policy provision, not the "use" portion. *Wagoner* defined "loading" as "a process which moves a 'load' from one place to another." *Id.* Unloading has basically the same definition, only without the convenience of a clear end. However, once Plaintiff was off the bus, for purposes of interpretation of the VACO Policy, unloading is terminated. Therefore, even if "use" included "unloading" as argued by Plaintiff, the accident did not occur in the "unloading" of the bus.

Even if the Court were to accept Plaintiff's argument that the accident occurred during the unloading process, the Court would still find that, based on the facts of this case, the *Powell* test, and the cases discussed above, the accident did not "result from the ownership, maintenance, or use" of the bus. *Powell* states that "there must be a causal relationship between the accident and employment of the insured motor vehicle as a vehicle." *Powell*, 227 Va. at 500-01, 318 S.E.2d at 397. The accident in this case occurred after Hicks had removed Plaintiff from the bus, when Plaintiff was on the sidewalk. Like in *Powell*, the bus, at best, was "merely . . . the situs" of the accident. *Id.* at 501, 318 S.E.2d at 398. *Rice* is similar to the instant case in that the injured person had completely alighted from the vehicle; however, unlike in *Rice* where the negligent, uninjured person had not completed his use of the vehicle when the accident occurred, in this case, Hicks had completed her use of the vehicle. While Hicks returned to the bus after leaving Plaintiff on the sidewalk, her use of the bus to transport and unload Plaintiff was complete. The bus in no way was in "use" at the time of the accident.

In addition, under the principles in *Powell*, VACO could not possibly have intended such an accident to be within the scope of the coverage afforded. In agreeing to the insurance contract with the School Board, VACO did not expect to be held liable for the negligence of an employee who just happened to commit that negligence close to the insured bus, after just removing a passenger from the bus.

Having found that the accident did not occur in the "use" of the school bus, VACO does not have to provide coverage. Therefore, there is no "valid and collectible insurance in force to cover the injury complained of" under Va. Code § 22.1-194 and the School Board retains its immunity. For the foregoing reasons, the School Board's Plea in Bar is granted and the case against it is dismissed with prejudice.

## B. *Erie's Motion to Quash Service of Process*

In addition to seeking compensation from the School Board, Plaintiff seeks coverage for his injuries under his mother's uninsured motorist policy

with Erie ("the Erie Policy"). Erie filed a Motion to Quash Service of Process on Erie because the uninsured motorist provision of the Erie Policy does not provide coverage under the facts and circumstances of this case.

Plaintiff is an "insured" under the Erie Policy under both the language of the policy and Va. Code § 38.2-2206(B) (2007) ("the Uninsured Motorist Statute"). In the policy, an "insured" is defined as the named insured – in this case, Moore – or any "family member." "Family member" is defined, in relevant part, as a person related to the insured by blood, marriage, or adoption who is a resident of the insured's household. In addition, § 38.2-2206(B) states that "insured" means "the named insured and, while resident of the same household, the spouse of the named insured, and relatives . . . while in a motor vehicle *or otherwise*." Va. Code § 38.2-2206(B) (2007) (emphasis added). Plaintiff clearly qualifies as an "insured" under both the policy and the statute.

In addition, the school bus is an "uninsured motor vehicle" under both the language of the policy and the Uninsured Motorist Statute. Under the policy, an "uninsured motor vehicle" is a land vehicle of any type "[f]or which the owner or operator is immune from liability for negligence under the laws of Virginia or the United States." Under the Uninsured Motorist Statute, an " 'uninsured motor vehicle' means a motor vehicle for which . . . (v) the owner or operator of the motor vehicle is immune from liability for negligence under the laws of the commonwealth or the United States. . . ." Va. Code § 38.2-2206(B) (2007). As discussed above, the School Board is immune because there is no "valid and collectible insurance in force to cover the injury complained of. . . ." Va. Code § 22.1-194 (2006). Therefore, the bus is an "uninsured motor vehicle" under both the policy and the Uninsured Motorist Statute.

The Erie Policy states that Erie will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an accident. Most significantly, the policy states, "The owner's or operator's liability for these damages *must arise out of the ownership, maintenance, or use of the 'uninsured motor vehicle'*. . . ." Therefore, whether the accident arose out of the "use" of the uninsured motor vehicle must be determined from the perspective of the owner or operator's "use" of the uninsured vehicle. In order for Erie to be obligated to pay Plaintiff's damages, the School Board's liability must arise out of its ownership, maintenance, or use of the school bus.

Because Plaintiff is an "insured" under the Erie Policy, the Court focuses its analysis on uninsured motorist insurance cases in which the plaintiff is already known to be an "insured" under the policy from which he

seeks to recover.[1] The Supreme Court of Virginia has applied the *Powell* test to this group of cases, even though *Powell* was not an uninsured motorist case. *See, e.g., Fireman's Fund Ins. Co. v. Sleigh*, 267 Va. 768, 594 S.E.2d 604 (2004); *Travelers Ins. Co. v. LaClair*, 250 Va. 368, 371-72, 463 S.E.2d 461, 463 (1995). Therefore, the Court includes its previous discussion of *Powell, Rice,* and *Wagoner* into its consideration of Erie's motion.

The Court applied the *Powell* test and did not find "use" in *Erie Ins. Co. Exchange v. Jones*, 248 Va. 437, 448 S.E.2d 655 (1994). In *Jones,* Ronnie Dale Tyree, Lisa Tyree, and their son were en route to a restaurant in a truck. Following closely behind the truck was an automobile driven by Michael Randall Banks. With its headlights repeatedly raised and lowered, the Banks car came to a sudden stop immediately behind and possibly in contact with the Tyree truck. Ronnie Tyree got out of the truck and, while standing on the driver-side, removed a rifle stored behind the seat and walked back to the Banks car. As Tyree was tapping the barrel of the rifle on the Banks car's window, the rifle discharged, injuring Banks and killing his passenger, Jill Marie West. The Tyree truck was an uninsured motor vehicle.

West's personal representative, Connie West Jones, sued, seeking coverage under the uninsured motorist provisions of her own personal policy and Banks' policy. West was an insured under both. Both policies contained language in the uninsured motorist provisions that was similar to that in the Erie Policy. In applying the *Powell* test, the Court held that the accident did not arise out of Tyree's "use" of the motor vehicle. The Court opined that West "had no nexus whatever with the uninsured vehicle, and the rifle Tyree used had no connection with the use to which the uninsured truck was being put." *Id.* at 442, 448 S.E.2d at 658. In addition, the Court held that such an incident was not within the intended scope of the coverage afforded:

---

[1] The Court has reviewed many Supreme Court of Virginia cases that address the concept of "use" in the context of whether or not an injured person qualifies as an "insured" under the Uninsured Motorist Statute. A person may qualify as an insured even if he is not the named insured or a family member residing in the same household, so long as that person is "any person who *uses* the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured. . . ." Va. Code § 38.2-2206(B) (2007) (emphasis added). This Court recognizes that the Supreme Court's analysis of "use" under the statute is applicable in cases such as this one where the plaintiff is already known to be an "insured" and "use" is to be determined under the policy language. However, the Court feels that its discussion herein of Supreme Court cases interpreting "use" under insurance policies where the injured person is known to be an "insured" suffices in deciding the instant case.

Automobile insurance policies are contracts. The named insured pays consideration for the insurer's covenant to compensate victims for vehicle-caused property losses, personal injuries, and death. Such damages are not vehicle-caused when the proximate cause is merely *incidental or tangential* to the ownership, maintenance, or use of the vehicle. Here, the proximate cause of the wrongful death was a criminal assault, one *related to the use of an uninsured motor vehicle only by a chronological sequence of events*. Such a risk was never one within the intendment of the parties to these insurance contracts.

*Id.* at 442-43, 448 S.E.2d at 658-59 (emphasis added).

Therefore, the Court did not obligate the insurers to pay under the uninsured motorist provisions of their policies.

The Supreme Court also applied the *Powell* test in *Nationwide Mutual Ins. Co. v. Smelser*, 264 Va. 109, 563 S.E.2d 760 (2002), and did find "use." In *Smelser*, Mary B. Smelser was walking from her car in a parking lot to an outlet mall, her purse slung over her shoulder. A car driven by an unknown male accelerated rapidly toward Smelser, and another unknown male reached from the passenger-side window of the approaching car and grabbed the strap of Smelser's purse, pulling her toward the vehicle. The male passenger dragged Smelser about ten feet alongside the vehicle before she fell to the pavement. The driver and passenger then fled from the scene in the automobile. Smelser sustained injuries as a result of the incident.

Because the driver of the car carrying the purse-snatcher was unknown, Smelser sought recovery through the uninsured motorist provision of her husband's automobile insurance policy, under which she was an "insured." The uninsured motorist provision language was similar to that in the Erie Policy. In applying the principles in *Powell*, the Court determined the following:

[T]he present case involves the ordinary movement of a vehicle that was a *direct cause, rather than a mere incidental aspect, of the injuries sustained*. Here, the vehicle's movement and its resulting force were used to help wrest the handbag from the Mrs. Smelser and to remove the assailants from the scene of the crime. Mrs. Smelser's injuries were causally related to the employment of the uninsured vehicle as a vehicle because the force from the vehicle's movement *directly contributed* to her injuries.

*Id.* at 115, 563 S.E.2d at 763 (emphasis added).

Therefore, the Smelser's injuries arose out of the "use" of the uninsured motor vehicle under the uninsured motorist provisions in her husband's policy.

In order for Erie to be obligated to pay Plaintiff's damages, the owner or operator's, that is, the uninsured motorist School Board's, liability must arise out of the ownership, maintenance, or use of the uninsured motor vehicle, that is, the school bus. Based on the cases discussed above, the School Board's liability does not arise out of the ownership, maintenance, or use of the bus. The Court's reasons for not finding "use" under the VACO Policy apply equally to the Court's consideration of "use" under the Erie Policy; therefore, the Court incorporates those herein. In addition, this case is analogous to *Jones* in that both involve independent acts of a wrongdoer that had no nexus whatsoever with the uninsured motor vehicle. While *Jones* involved an intentional shooting near an uninsured vehicle and the instant case involves negligence, the conclusion is the same. "Such damages are not vehicle-caused when the proximate cause is merely incidental or tangential to the ownership, maintenance, or use of the vehicle." *Jones*, 248 Va. at 442-43, 448 S.E.2d at 658-59. In this case, the cause of the accident was negligence, "related to the use of an uninsured motor vehicle only by a chronological sequence of events. Such a risk was never one within the intendment of the parties to [the] insurance contract." *Id.* Unlike in *Smelser* where the vehicle and its movement were the direct causes, rather than mere incidental aspects, of the injuries sustained, in the instant case, the proximity of the bus and Plaintiff's prior positioning on it are nothing more than mere incidental aspects of the injuries he sustained.

Because the School Board's liability does not arise out of its ownership, maintenance, or use of the bus, Erie is not obligated to afford coverage to Plaintiff under the uninsured motorist provision of the Erie Policy. For the foregoing reasons, Erie's Motion to Quash is granted.

## III. *Conclusion*

For the reasons stated in Part II.A, the Court does not find "use" as required under the VACO Policy. Therefore, there is no valid and collectible insurance in force to cover Plaintiff's injuries, and the School Board's immunity is not abrogated under § 22.1-194.

286

In addition, for the reasons stated in Part II.B and those reasons incorporated from Part II.A, the Court does not find "use" as required under the Erie Policy. Therefore, Erie is not required to provide Plaintiff with uninsured motorist coverage.

The School Board's Plea in Bar is granted and Erie's Motion to Quash is likewise granted. It is so ordered.