PRESENT:  All the Justices

NATIONWIDE MUTUAL INSURANCE
COMPANY, AN OHIO CORPORATION

v.  Record No. 012841    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                              June 7, 2002
JO-ANNA SMELSER, EXECUTRIX, ET AL.


            UPON A QUESTION OF LAW CERTIFIED BY THE UNITED
            STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

     Under the provisions of Rule 5:42, the United States Court

of Appeals for the Fourth Circuit certified to this Court a

question of Virginia insurance law.  The certified question

accepted by this Court asks whether a pedestrian, who was

injured when her purse was "snatched" by an unidentified

passenger in a moving vehicle, sustained injuries arising "out

of the use of an uninsured motor vehicle for purposes of

uninsured motorist provisions in [a certain insurance] policy."

The facts as stated in the certification order are set forth

below.

     On March 27, 1999, Mary B. Smelser (Mrs. Smelser), then 74

years old, was a passenger in an automobile driven by her

daughter, Jo-Anna Smelser (Jo-Anna), from Virginia Beach to the

Williamsburg Outlet Mall in Lightfoot.  After Jo-Anna parked the

car in the mall parking lot, Mrs. Smelser stepped from the

passenger side of the vehicle, walked to the rear of the car,

and turned toward the mall.  Her purse hung from her left

shoulder.  Because it was raining outside, Jo-Anna momentarily remained in the vehicle to locate an umbrella.

Jo-Anna heard "the sound of tires spinning in water trying to get traction" and both Jo-Anna and Mrs. Smelser heard a "very loud" engine noise.  At that moment, a car driven by an unknown male accelerated rapidly toward Mrs. Smelser.  Another unknown male reached from the passenger-side window of the approaching car and grabbed the strap of Mrs. Smelser's purse, pulling Mrs. Smelser toward the vehicle.  The male passenger dragged Mrs. Smelser about ten feet alongside the car before she fell to the pavement.  The driver and passenger then fled from the scene in the automobile.

Mrs. Smelser sustained injuries as a result of this incident, including fractures of her left shoulder and pelvis. In her description of the incident, Mrs. Smelser stated that she was "whipped off the ground and pinned to the car, until her shoulder broke."  She described hearing a "cracking sound" and feeling "a very severe sharp pain in her left shoulder" before she was "propelled" away from the vehicle.  She did not know whether the vehicle actually struck her or dragged her.

Mrs. Smelser was insured under a motor vehicle liability insurance policy that her husband, Eugene J. Smelser, maintained with Nationwide Mutual Insurance Company (Nationwide).  Because the driver of the car carrying the "purse-snatching" passenger

was unknown, Mrs. Smelser sought recovery under the uninsured and underinsured motorist (UM/UIM) provisions of her husband's insurance policy (the Nationwide policy). That policy required Nationwide to pay to Mrs. Smelser, "in accordance with Section 38.2-2206 of the Code of Virginia," all sums that she was legally entitled to recover as damages from the driver of an uninsured vehicle for injuries resulting from "the ownership, maintenance or use" of the uninsured motor vehicle.

Mrs. Smelser filed a motion for judgment in the Circuit Court for the City of Virginia Beach against the unknown motorist, requesting damages under the above provisions of the Nationwide policy. In September 1999, Mrs. Smelser died from causes unrelated to the "purse-snatching" incident and Jo-Anna and Eugene qualified as executors of her estate (collectively, the executors).

Nationwide filed a declaratory judgment action against the executors in the United States District Court for the Eastern District of Virginia seeking a declaration that Nationwide was not liable to provide coverage for Mrs. Smelser's injuries. The personal injury action in Virginia Beach was stayed pending the outcome of the declaratory judgment action.

In the declaratory judgment action, Nationwide asserted that Mrs. Smelser was not entitled to coverage under the policy provision at issue because "the facts and circumstances of the

alleged incident do not constitute . . . 'use' of the motor vehicle" under Va. Code § 38.2-2206.  Nationwide and the executors filed cross-motions for summary judgment.

In support of their summary judgment motion, the executors submitted an affidavit from Richard T. Holden, M.D., Mrs. Smelser's orthopedic surgeon.  In the affidavit, Dr. Holden stated an opinion within a reasonable degree of medical certainty that it was "highly unlikely" that Mrs. Smelser's injuries "were caused by a man seated in a stationary automobile."  Dr. Holden further concluded that "her injuries were entirely consistent with . . . being forcibly pulled to a moving automobile, dragged approximately ten feet, and then dropped to a parking lot surface."

The executors also submitted an affidavit from Robert S. Neff, M.D., another orthopedic surgeon.  Dr. Neff stated that after a review of Mrs. Smelser's medical records, it was his opinion within a reasonable degree of medical certainty that Mrs. Smelser's injuries "were not caused by a man seated in a stationary automobile."  Dr. Neff concluded that, instead, Mrs. Smelser's injuries were "entirely consistent with a man in a moving vehicle grabbing [Mrs. Smelser] or her purse strap."

After hearing argument on the cross-motions for summary judgment, a magistrate judge granted Nationwide's motion and denied the executors' motion.  The court held that the

4

circumstances leading to Mrs. Smelser's injuries did not constitute "use" of an uninsured motor vehicle under the UM/UIM provisions of the Nationwide policy. The executors appealed from this judgment to the United States Court of Appeals for the Fourth Circuit, which certified the present question of Virginia law to this Court.

The executors argue before this Court that Mrs. Smelser was entitled to coverage under the UM/UIM provisions of the Nationwide policy because the automobile carrying the unknown assailants was being used as a vehicle at the time she was injured. The executors assert that the assailants used the car to assist in stealing Mrs. Smelser's purse and to effect their escape. According to the executors' argument, the force of the moving vehicle dragged Mrs. Smelser before she fell onto the pavement and, thus, was a substantial factor contributing to the cause of her injuries.

In response, Nationwide contends that the outcome of the present case is controlled by our decisions in Lexie v. State Farm Mutual Automobile Insurance Company, 251 Va. 390, 469 S.E.2d 61 (1996), and Travelers Insurance Company v. LaClair, 250 Va. 368, 463 S.E.2d 461 (1995). Nationwide asserts that like the employment of the vehicles in those cases, the assailants' vehicle in the present case was being used as a fortress or an outpost from which they inflicted intentional

5

injury on another person.  Nationwide also argues that the parties to the insurance contract did not contemplate the provision of UM/UIM coverage for criminal acts committed by a passenger in an uninsured vehicle.[*]

Certain general principles govern this inquiry.  Under Code § 38.2-2206(B) and the terms of the Nationwide policy, a motor vehicle is an "uninsured motor vehicle" when the owner or operator of the vehicle is unknown.  As Nationwide concedes, Mrs. Smelser, wife of the named insured residing in the same household with her husband, was an insured of the first class entitled to seek coverage under the policy's uninsured motorist provisions for injuries she sustained as a pedestrian.  See Insurance Co. of N. Am. v. Perry, 204 Va. 833, 836, 134 S.E.2d 418, 420 (1964).

In determining the scope of coverage provided under the Nationwide policy, we must consider the intention of the parties to the insurance contract as expressed in the policy terms, including those terms required by Code § 38.2-2206.  See Lexie, 251 Va. at 396, 469 S.E.2d at 64; LaClair, 250 Va. at 371-72, 463 S.E.2d at 463.  We will construe the contract provisions concerning "use" of a vehicle in accordance with the natural and

_____

[*] Both Nationwide and Smelser agree that in answering the certified question, this Court need not address the issue whether there was a concert of action between the driver and the passenger of the unknown vehicle.

6

ordinary meaning of the terms employed.  Id.; State Farm Mut. Auto. Ins. Co. v. Powell, 227 Va. 492, 500, 318 S.E.2d 393, 397 (1984).

In order for an injury to be classified as arising from the "use" of a vehicle, there must be a causal relationship between the injury sustained and the employment of the motor vehicle as a vehicle.  Edwards v. Government Employees Ins. Co., 256 Va. 128, 130, 500 S.E.2d 819, 821 (1998); Randall v. Liberty Mut. Ins. Co., 255 Va. 62, 66, 496 S.E.2d 54, 56 (1998); Lexie, 251 Va. at 396, 469 S.E.2d at 64; LaClair, 250 Va. at 372, 463 S.E.2d at 463.  However, such "use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense."  Id. (quoting Powell, 227 Va. at 500, 318 S.E.2d at 397).

In Lexie and LaClair, we examined the nature of this causal relationship in the factual context of criminal acts committed by occupants of uninsured vehicles.  In Lexie, the parties seeking coverage under their uninsured motorist policy provisions were riding in a moving vehicle when they were injured in a "drive-by shooting" perpetrated by assailants occupying another moving vehicle.  We explained that in determining uninsured motorist coverage, the main focus of the "use" inquiry is the "manner in which the vehicle, whether moving or stationary, is being employed, not upon the activity

7

or role of any assailant who may be in, upon, or around the uninsured vehicle."  Lexie, 251 Va. at 396-97, 469 S.E.2d at 64.

We held that the injured parties failed to establish that their gunshot wounds were sustained as a result of the uninsured vehicle being employed as a vehicle.  Id. at 397, 469 S.E.2d at 64.  Instead, their injuries resulted solely from the activities of the assailants in the uninsured vehicle and the movement of that vehicle was only an incidental factor in the injuries that occurred.  Thus, the evidence failed to demonstrate a causal relationship between the injuries sustained and the "use" of the vehicle as a vehicle.

We likewise concluded in LaClair that such a causal relationship did not exist.  There, a deputy sheriff was shot during a "traffic stop."  His assailant was partially inside the uninsured vehicle when the shots were fired and the assailant used the stationary vehicle as a shield.  We held that the natural and ordinary meaning of "use" of a motor vehicle did not include the utilization of the uninsured vehicle as a fortress or a shield.  LaClair, 250 Va. at 373, 463 S.E.2d at 464.

Unlike Lexie and LaClair, the present case involves the ordinary movement of a vehicle that was a direct cause, rather than a mere incidental aspect, of the injuries sustained.  Here, the vehicle's movement and its resulting force were used to help wrest the handbag from Mrs. Smelser and to remove the assailants

8

from the scene of the crime.  Mrs. Smelser's injuries were causally related to the employment of the uninsured vehicle as a vehicle because the force from the vehicle's movement directly contributed to her injuries.  Thus, we conclude that Mrs. Smelser's injuries arose out of the "use" of the uninsured motor vehicle under the UM/UIM provisions in the Nationwide policy.

For these reasons, we will answer the certified question in the affirmative.

Certified question answered in the affirmative.

9