## CIRCUIT COURT OF THE CITY OF NORFOLK

Russell M. Terry

    **v.**

John Doe

April 7, 2004

Case No. (Law) L03-0043

BY JUDGE JOSEPH A. LEAFE

This case comes before the Court on motions for summary judgment. The parties have submitted briefs and the Court has heard oral arguments. For the reasons explained below, the Court denies GEICO Indemnity Company's (GEICO) and Victoria Automobile Insurance Company's (Victoria) (collectively, the Defendants) motions for summary judgment. Furthermore, the Court concludes that, should the finder of fact resolve the case in favor of the Plaintiff, Russell M. Terry, Terry would be entitled to insurance coverage under the uninsured/underinsured motorist provisions of the policies issued by the Defendants.

June 1, 2002, Terry, was walking westward in the eastbound tube of the Hampton Roads Bridge Tunnel, on the catwalk, cleaning the cameras in the tunnel during the course of his employment with VDOT. (Mot. for J. ¶ 1; Terry Dep. at 9, ll. 20-24.) At approximately 2:40 a.m., Terry alleges an occupant of a vehicle passing through the tunnel threw a bottle, or some type of object, from the moving vehicle in Terry's direction. (Mot. for J. ¶ 2.) The object, according to Terry, hit him on the right side of his forehead, at which point he was knocked into the road, breaking the guardrail on the catwalk, after which Terry had only a fragmented memory of the incident. (Terry Dep. at 9, ll. 20-24.) At the time of the accident, Terry asserts he was covered by two automobile insurance polices' uninsured/underinsured motorist provisions, one issued by GEICO and one issued by Victoria Automobile Insurance Company; he names them as defendants in this

matter pursuant to Virginia Code § 38.2-2206(F). (Mot. for J. ¶¶ 4, 5.)

Summary judgment is appropriate only if no material fact is genuinely in dispute. R. Sup. Ct. Va. 3:18. In considering a motion for summary judgment, the court must adopt those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason. *Dickerson v. Fatehi*, 253 Va. 324, 327, 484 S.E.2d 880, 882 (1997). Summary judgment is authorized only where the moving party is entitled to judgment as a matter of law. *Andrews v. Ring*, 266 Va. 311, 318, 585 S.E.2d 780, 783 (2003). The court may consider deposition testimony if the parties agree. *Id.*

It is true that "negligence cannot be presumed from the mere happening of an accident" and the finder of fact should not be left to rely on "conjecture, guess, or random judgment." *Weddler v. Draper*, 204 Va. 319, 322, 130 S.E.2d 462, 465 (1963). However, it is also true that the plaintiff need not exclude every other possible conclusion, and the finder of fact can make reasonable inferences from circumstantial evidence. *Woolridge v. Eschelon Serv. Co.*, 243 Va. 458, 461, 416 S.E.2d 441, 443 (1992).

By the parties' agreement, the Court has considered the deposition testimony of Terry and several other individuals in consideration of summary judgment. Based on this testimony, it is clear that Terry was walking through the tunnel on the catwalk facing traffic at the time of the incident. In his capacity as a VDOT employee, he was proceeding to wipe clean the cameras inside the tunnel. (Terry Dep. at 9, ll. 20-24.) As he was walking, Terry alleges that he saw a tractor-trailer and at least one car go by, when he heard some kind of yelling from one of the vehicles. (Terry Dep. at 10, l. 10, p. 14, ll. 19-20.) Shortly thereafter, according to Terry, he was struck by an object on the right side of his forehead. (Terry Dep. at 13, ll. 16-19.)

Terry was found unconscious in the roadway, and the catwalk railing proximate to where he was walking was broken. Other VDOT employees were alerted to the situation and responded to the scene where Terry was located. One such employee, Philip E. Davis, testified during his deposition that when Terry regained consciousness, Davis asked Terry what had happened. Davis reports that Terry's response was "something hit me;" although, Terry was unable to answer questions regarding his name and where he was. (Davis Dep. at 6, ll. 16-18.) It is also true that later, when Terry had been removed to a hospital, he was unable to recall to Davis what had happened. (Davis Depo. p. 14, ll. 24-25.) The only thing located was some shattered glass and a label from a Jack Daniels alcoholic beverage. (Caison Dep. at 6, 2-3, p. 7, ll. 7-20.)

The Defendants argue that since Terry cannot describe what the object looked like, the vehicle from which an object was thrown, or how many people were in the vehicle, Terry cannot maintain his cause of action. Defendants characterize Terry's inability to remember details surrounding the incident as supporting the proposition that Terry cannot accurately recall what happened to him whatsoever. On the contrary, the deposition testimony submitted to the Court, summarized above, provides sufficient facts which, when taken together, could allow a finder of fact to reach a conclusion in favor of Terry. There are genuine issues of fact, which should be resolved by a finder of fact; therefore, the Court denies Defendants' motions for summary judgment. Furthermore, Defendants argue there are alternative explanations to the accident that are just as likely as the explanation presented by Terry. For example, GEICO asserts it is equally possible Terry "stumped his toe" and fell into the roadway. (GEICO Mem. in Supp.of Sum. J. 5.) However, the clear, repeated testimony of Terry is that he was struck in the forehead by an object. In considering Terry's testimony, the Court recognizes the practical effect of the accident's occurrence in the Tunnel. Unlike if the accident had occurred outside, the unique enclosed nature of a tunnel limits from where a missile could have originated. If an object did not emanate from another pedestrian, and it was not part of the structural integrity of the tunnel, it becomes exceedingly likely that the object came from a vehicle traveling through the tunnel. The instant case presents just such a scenario. There is no evidence of any pedestrian other than Terry in the tunnel at the time of the accident, and there is no evidence of any object, other than broken glass, being identified in the area surrounding Terry's accident.

The remaining issue at this juncture is whether, if a finder of fact concludes Terry's injury took place in the manner alleged by Terry, the incident can be categorized as involving the "use" of a vehicle, as contemplated by Virginia Code § 38.2-2206(f). In *Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 469 S.E.2d 61 (1996), the Supreme Court of Virginia held that firing a weapon from inside a vehicle did not constitute "use" of a vehicle. In rendering its decision, the Court focused on the manner in which the vehicle was being employed. In the context of a "drive-by shooting," the injury inflicted is the result solely of the actions of the assailants inside the vehicle. The actual movement of the vehicle is merely incidental to the injury sustained. For purposes of Virginia Code § 38.2-2206(f), the term "use" of a vehicle "does not contemplate utilization as a fortress, as a shield, or as an outpost from which an assailant may inflict injury with a firearm." *Id.*

The Court distinguished its holding in *Lexie* from the situation where an assailant snatched a pedestrian's purse, dragging the pedestrian behind the car for a number of feet and causing her injury. *Nationwide Mut. Ins. Co. v. Smelser*, 264 Va. 109, 563 S.E.2d 760 (2002). In examining this circumstance, the Court reiterated that there must be a causal relationship between the injury sustained and the use of the vehicle as a vehicle; although, the "use" need not be the direct, proximate cause of the injury in the strict legal sense. As opposed to *Lexie*, the injury in the instant case was a direct product of the ordinary movement of the vehicle because the "injuries were causally related to the employment of the vehicle as a vehicle because the force from the vehicle's movement directly contributed to [the victim's] injuries." *Smelser*, 264 Va. at 115, 563 S.E.2d at 763.

While Virginia has not dealt specifically with objects thrown from vehicles, other states have done so in the course of interpreting their own statutes. The Supreme Court of South Carolina held that injuries inflicted from a bottle thrown from a moving vehicle did arise from the "ownership, maintenance, or use" of a vehicle. *Home Ins. Co. v. Towe*, 441 S.E.2d 825, 826 (S.C. 1994). The court in *Towe*, much like the Supreme Court of Virginia, stated that "[t]he test for determining whether an injury arose out of the use of a vehicle turns on the causal connection between the vehicle and the injury." *Id.* at 827. As the court pointed out, the "vehicle's speed contributed to the velocity of the bottle" and increased the seriousness of the injuries sustained. *Id.*

The Court of Appeals of Tennessee, and the Court of Appeals of Ohio, however, have held to the contrary. *See Nicely v. Doe*, 1999 Tenn. App. LEXIS 243 (April 16, 1999); *Babb v. Grizzell*, 1999 Ohio App. LEXIS 3449 (July 30, 1999). In *Nicely*, the evidence was that someone had thrown an object from a moving vehicle, causing a passing motorist to swerve and crash his car. The court decided that the accident was not caused by the vehicle, but rather by an improper act unrelated to the use of the vehicle by the person in the car. In *Babb*, the facts were that a vehicle's passenger intentionally threw a bottle of beer at the plaintiff, injuring him. Whether this injury arose from the "use" of the vehicle was at issue in determining insurance coverage. The Court found that the bottle was the instrumentality that caused the injury, not the vehicle, thus affirming the trial court's grant of summary judgment.

In deciding the present case, the Court must determine whether there exists a causal relationship between Terry's injuries and the use of a vehicle as a vehicle. The Court takes into consideration the practical difference between an object, such as a bottle, thrown from a stationary position versus a bottle thrown from a moving vehicle. An object thrown from a stationary position,

which would include a vehicle not in motion, would under most circumstances logically inflict a less serious wound than an object thrown from a moving vehicle. It can also be fairly said that a primary function of an automobile is to accelerate and travel with a certain amount of speed. The injury sustained by someone struck by an object ejected from a moving vehicle can be said to arise from the use of that vehicle, if the injury is directly related to the increased force behind that object by virtue of its having come from a moving vehicle. In the present case, being struck in the forehead with an object thrown from a moving vehicle, if the finder of fact so determines, would cause an injury of a more serious nature because it emanated from a vehicle. Based upon the holdings of the Supreme Court of Virginia in *Lexie* and *Smelser*, and the principles of law set forth therein, this Court concludes that Terry's injury, if the finder of fact resolves the case in Terry's favor, does arise from the use of a vehicle.