Present: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Russell, S.J.

FIREMAN'S FUND INSURANCE
COMPANY                                          OPINION BY
                                    SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 031515                        April 23, 2004

BETTY L. SLEIGH, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Thomas A. Fortkort, Judge

In this appeal from a declaratory judgment, we revisit the frequently-litigated question of the extent of the coverage provided pursuant to the uninsured/underinsured motorist statute, Code § 38.2-2206.

Betty L. Sleigh was employed by the City of Alexandria Police Department as a Parking Enforcement Officer. Her unrefuted testimony was the only evidence in the record concerning the facts of the case. She testified that on May 10, 1999, she went to the 400 block of North Royal Street, in Alexandria, to enforce "street cleaning hours" when parking was prohibited by local ordinance on certain days of the week. Finding a car parked in violation of the ordinance, she stopped her police vehicle "alongside it," got out, walked to a position between the two vehicles, and began to write a citation.

Before Sleigh could complete the citation and place it on the parked car, a young woman, later identified as Crystal A.

Gibson, ran out of a nearby building and "jumped into the vehicle," striking Sleigh in the arm with the driver's-side door as she opened it to enter the parked car. Apparently realizing that she had failed to bring her keys with her, Gibson "yelled to a woman behind us . . . bring her the keys." The woman produced the keys and Gibson opened the door, striking Sleigh a second time as she got out of the car to retrieve the keys. Opening the door a third time, Gibson "jumped back into the car" with the keys and Sleigh "kind of pushed the door back to defend myself." At this point, Gibson "started yelling" and "jumped out the door and slammed the door up against me . . . she come [sic] flying out of the car and pushed the door very, you know, really very hard, and I turned to move and she then pushed me where my left side went up against the car." Sleigh further testified that this final blow from Gibson's car door drove her back into the side of her police vehicle with such force that she sustained permanent back injury requiring surgery. Sleigh tried to make a radio call requesting "backup" but Gibson seized her radio, threw it to the ground, "jumped in her car and took off."

Sleigh filed a motion for judgment against Gibson in the trial court to recover damages for her injuries and took the position that Fireman's Fund Insurance Company (the insurer) afforded coverage to her under the uninsured motorist

2

provisions of a policy the insurer had issued on Sleigh's personal automobile. The insurer brought the present motion for declaratory judgment against Sleigh seeking an adjudication that the uninsured motorist coverage provided by its policy does not apply to Sleigh's "altercation" with Gibson. It is undisputed that Sleigh was an "insured" under the policy and that Gibson was an "operator of an uninsured motor vehicle" as defined by Code § 38.2-2206 and as contemplated by the policy. The only dispute is whether the coverage applies under the facts of the case.

The parties, by agreement, submitted the case to the court on Sleigh's deposition and the policy, further agreeing that the facts were undisputed. The court, in a letter opinion, ruled that the insurer's policy afforded coverage to Sleigh, and dismissed the motion for declaratory judgment.

On appeal, the insurer contends that Gibson was not using her car as a vehicle when she struck Sleigh with the car door, but was rather using the car, or a part of it, as a weapon. The uninsured motorist clause of the policy provides:

> The Company will pay . . . all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured . . . caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle.

3

The governing statute, Code § 38.2-2206, provides, in pertinent part, that automobile insurance policies issued in Virginia must contain:

> . . . provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . .

The insurer contends that Gibson's use of the uninsured vehicle as a weapon is inconsistent with the concept of "use of the vehicle as a vehicle," a prerequisite to uninsured motorist coverage under our decisions, citing Nationwide Mutual Insurance Co. v. Smelser, 264 Va. 109, 114, 563 S.E.2d 760, 763 (2002). The insurer argues that the tortfeasor's intent was to use the car door to inflict injury, not for the ordinary purposes for which the door was designed, and that this is determinative.

Sleigh argues that the tortfeasor's intent is irrelevant because the true test is whether the uninsured vehicle was being employed in the ordinary manner for which it was designed and constructed, rather than in a manner foreign to its designed purpose, and whether such employment was causally related to the injury sustained. The trial court, after an extensive review of our decisions, agreed.

In Lexie v. State Farm Mut. Auto. Ins. Co., 251 Va. 390, 396-97, 469 S.E.2d 61, 64 (1996), applying similar policy

4

language, we said, "The principal focus is upon the manner in which the [uninsured] vehicle, whether moving or stationary, is being employed, not upon the activity or role of any assailant who may be in, upon, or around the uninsured vehicle."  In Utica Mutual v. Travelers Indemnity, 223 Va. 145, 147-48, 286 S.E.2d 225, 226 (1982), we found an insurer liable for injuries sustained by its insured's passenger as a result of a willful tort by an uninsured motorist who deliberately ran the insured's car off the road.

Thus, it is clear that in Virginia the intent of the uninsured tortfeasor is irrelevant to the question of coverage; rather, the determinative issue is the nature of the employment of the uninsured vehicle.  Where such a vehicle is employed in a manner foreign to its designed purpose, e.g., Lexie, supra (drive-by shooting from moving vehicle); Travelers Insurance Company v. LaClair, 250 Va. 368, 463 S.E.2d 461 (1995) (shooting from behind door of stopped car, using it as a shield), there is no coverage under the uninsured motorist provisions because the resulting injury does not arise out of the "use" of the uninsured vehicle as a vehicle, but instead arises from its employment in a manner contemplated neither by its designers, its manufacturer, nor the parties to the insurance contract.

On the other hand, where the injury arises out of the employment of the uninsured vehicle in the manner for which it was designed and as reasonably contemplated by the parties to the insurance contract, coverage exists under such policies where there is a causal relationship between such use and injury sustained by the insured, regardless of the intent of the uninsured motorist.  See, Smelser, supra (passenger in moving car driven by uninsured motorist reached out window and seized straps of purse carried by insured pedestrian; forward movement of uninsured car dragged victim along the pavement).

Car doors are designed and manufactured to be opened and closed.  It is clearly within the contemplation of the parties to an insurance contract that injury may sometimes be caused by the act of using a car door as designed, either negligently or willfully.  Here, Gibson's use of her car door as designed was use of the uninsured vehicle "as a vehicle" and was causally related to Sleigh's injury.  We agree with the trial court's analysis and will affirm the judgment.

Affirmed.