# CIRCUIT COURT OF THE CITY OF MARTINSVILLE

Allstate Insurance Co.

v.

Regina Waller Hairston,
Administrator
of the Estate of
Delvin Lamont Hairston,
deceased

October 3, 2006

Case No. 05000109-00

BY JUDGE G. CARTER GREER

In this declaratory judgment action, Allstate Insurance Company seeks a determination that the defendant's decedent was not covered under the terms of an uninsured motorist endorsement to an automobile insurance policy that Allstate issued to Dennis and Regina Hairston, the decedent's parents. The endorsement provides in pertinent part that the carrier "will pay . . . all sums which the insured or his legal representative shall be entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured . . . caused by accident and *arising out of the ownership, maintenance, or use of such uninsured motor vehicle.*" (Emphasis added.) The issue is whether the death of the decedent arose out of the "use" of the uninsured motor vehicle within the meaning of the policy.

There has been no evidentiary hearing, and Allstate has moved for summary judgment, based upon the allegations of the motion for judgment filed in *Regina Waller Hairston, Administrator of the Estate of Delvin Lamont Hairston v. Albert Patrick Bowman et al.*, which is currently pending in this court. The court may not enter summary judgment "if any material fact is genuinely in dispute." Rule 3:20 of the Rules of the Supreme Court of Virginia.

Where there are conflicts in the evidence, it is the jury's responsibility, not the court's, to resolve them. *Five Lakes, Inc. v. Randall, Inc.*, 214 Va. 4, 196 S.E.2d 906 (1973). However, summary judgment is proper "in those cases . . . in which the only dispute concerns a pure question of law." *Carwile v. Richmond Newspapers*, 196 Va. 1, 5, 82 S.E.2d 588 (1954). In their memoranda, both parties rely upon the allegations of the motion for judgment. Although the defendant argues that there are material facts in dispute, Defendant's Memorandum at 6, this case presents a legal issue, rather than a factual one.

In her motion for judgment, the defendant alleges as follows:[1]

1. On Wednesday, May 15, 2002, at approximately 10:00 p.m., Delvin Lamont Hairston was visiting a friend in the City of Martinsville.

2. While Delvin Hairston was visiting his friend, the defendants were driving around looking for him.

3. The defendants armed themselves with loaded firearms during the course of their search. They discussed their plan to use several cars to intimidate Mr. Hairston and to fire the weapons when they found him.

4. When they finally located Mr. Hairston, several of the defendants fired their weapons in accordance with their common plan.

5. Mr. Hairston was struck in the chest by one of the many bullets fired by the defendants. His injuries were fatal, and Delvin Hairston passed away on May 15, 2002.

6. In their statements to law enforcement investigating the death of Delvin Hairston, defendants Curtis Orlander Rob[ertson] . . . and Christopher S. Wilson . . . stated that they fired their weapons into the air and never intended to shoot another person.

7. At least one of the remaining defendants also discharged a firearm. All of the defendants were aware of and participated in the plan to intimidate Delvin Hairston using their number, their vehicles, and their firearms.

---

[1] The paragraphs are renumbered since the court is omitting the first paragraph of the motion for judgment from consideration.

Citing *Travelers Ins. Co. v. LaClair*, 250 Va. 368, 463 S.E.2d 461 (1995), and *Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 469 S.E.2d 61 (1996), Allstate argues that "[t]he defendants . . . were clearly using the vehicle as a means of intimidation rather than as a vehicle," that "[t]he state of mind of the person committing the assault is irrelevant," Plaintiff's Memorandum at 6, and that the policy provides no uninsured motorist (UM) coverage to this unfortunate victim of a drive-by shooting. Relying principally upon *Nationwide Mut. Ins. Co. v. Smelser*, 264 Va. 109, 563 S.E.2d 760 (2002), and *Terry v. Doe*, 64 Va. Cir. 341 (2004), the defendant counters that *LaClair* and *Lexie* are distinguishable in that those cases involved intentional shootings, that the existence of criminal activity, standing by itself, does not cause a lapse of coverage, and that "it was the ordinary movement of the vehicle that altered the trajectory of the [bullet] from its intended and harmless target to Delvin Hairston." Defendant's Memorandum at 8. Consequently, the defendant contends that the tortfeasors were using their vehicle within the meaning of the policy and that the endorsement must provide UM coverage to the defendant's decedent.

In *Fireman's Fund Ins. Co. v. Sleigh*, 267 Va. 768, 594 S.E.2d 604 (2004), in which the Supreme Court of Virginia held that repeatedly opening a car door so as to injure a police officer constituted use of the uninsured vehicle as a vehicle, the Court stated as follows:

> [I]t is clear that, in Virginia, the intent of the uninsured tortfeasor is irrelevant to the question of coverage; rather, the determinative issue is the nature of the employment of the uninsured vehicle. Where such a vehicle is employed in a manner foreign to its designed purpose, there is no coverage under the uninsured motorist provisions because the resulting injury does not arise out of the "use" of the uninsured vehicle as a vehicle, but instead arises from its employment in a manner contemplated neither by its designers, its manufacturers, nor the parties to the insurance contract.

*Sleigh*, 267 Va. at 771-72 (citations omitted). Holding that intentional drive-by shootings in four consolidated cases did not constitute "use" of the uninsured vehicles, in *Lexie, supra*, the Supreme Court of Virginia stated that " [t]he principal focus is upon the manner in which the vehicle, whether moving or stationary, is being employed, not upon the activity or role of any assailant who may be in, upon, or around the uninsured vehicle." *Lexie*, 251 Va. at 396-97. In *LaClair, supra*, the Supreme Court of Virginia held that an assailant's

employment of a car as a shield and shooting platform did not amount to "use" of the vehicle within the meaning of the policy provisions. *LaClair*, 250 Va. at 372. The Court stated that "[m]anifestly, the natural and ordinary meaning of 'use' of a private, passenger motor vehicle does not contemplate its utilization as a mobile or stationary pillbox or fortress, or as a shield, or as an outpost from which an assailant may inflict intentional injury with a firearm." *Id.* at 373. In each of these cases, the Court concluded that there was no causal relationship between the use of the vehicle as a vehicle and the injuries inflicted.

The court is of the opinion that this case is controlled by *Lexie, supra,* and *LaClair, supra,* and that the tortfeasors' utilization of the car as a mobile pillbox was not a "use" of the vehicle within the meaning of the policy, regardless of the intentions of the tortfeasors. Furthermore, as a matter of law there is no causal relationship between the use of the vehicle as a vehicle and the death of Delvin Hairston. *Smelser, supra,* holding that the perpetrators' employment of a car to drag a purse-snatching victim constituted "use" of the vehicle, is distinguishable. Significantly, in that case, the movement of the vehicle itself, rather than the activity of the occupants, was the cause-in-fact of the victim's injuries, whereas, in the case at bar, the cause-in-fact of the death of the defendant's decedent was the activity of the tortfeasors in firing guns.

Moreover, Judge Leafe's decision in *Terry, supra,* does not support the defendant's position. In that case, which involved the throwing of a bottle from a moving car, the court denied motions for summary judgment, holding that, if the finder of fact determines that "the injury is directly related to the increased force behind that object by virtue of its having come from a moving vehicle," there is a causal relationship between the injuries and the use of the vehicle. *Terry,* 64 Va. Cir. at 10. In ruling on a motion for summary judgment, the court "must adopt those inferences from the facts that are most favorable to the nonmoving party, 'unless the inferences are strained, forced, or contrary to reason'." *Carson v. LeBlanc,* 245 Va. 135, 140, 427 S.E.2d 189 (1993), *quoting Bloodworth v. Ellis,* 221 Va. 18, 23, 267 S.E.2d 96, 99 (1980). Incredibly, the defendant asks the court to infer that the movement of the vehicle altered the trajectory of one of the bullets so that it struck Delvin Hairston. Finding that this inference is contrary to reason, the court refuses to draw it.

The court grants the motion for summary judgment.