COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Causey and Friedman
Argued at Norfolk, Virginia

UNITED SERVICES AUTOMOBILE ASSOCIATION

OPINION BY
v.          Record No. 0391-22-1          JUDGE FRANK K. FRIEDMAN
MARCH 14, 2023

BRUCE A. ESTEP

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Robert G. MacDonald, Judge

Todd M. Fiorella (Katherine M. Lennon; Fraim & Fiorella, P.C., on
briefs), for appellant.

Scott V. Whitlow for appellee.

This appeal raises the question of whether an auto insurance policyholder is entitled to

coverage for injuries sustained while packing his car in a hotel parking lot. Bruce Estep was

loading luggage into the rear hatch of his SUV when he was struck by a wind-blown luggage

cart. He was knocked to the ground and injured. He sought coverage from his insurance policy

with United Services Automobile Association (USAA), but USAA claimed Estep's injuries did

not fall within the coverage afforded under his policy and Code § 38.2-2201. The circuit court

entered a final order awarding judgment to Estep on a finding that his injuries were covered by

his policy, entitling him to $30,000 for medical benefits. Because we agree with the court below

that Estep's injuries were sustained while he was using and occupying his car, we affirm.

BACKGROUND

The parties stipulated to the relevant facts. On November 20, 2016, Estep and his wife

checked out of a hotel in Fairfax County. Estep began loading his bags into his car preparing for

a return to his home in Chesapeake. He intended to return the luggage cart to the hotel lobby

once the car was packed. Estep first loaded several items into the rear seats of the vehicle and then began the process of putting the remaining luggage in the trunk. The rear door of the SUV was left open. Estep was "leaning into the rear of the vehicle, bent over at the waist and reaching into the vehicle, such that his body was in the vehicle from the waist up" when a gust of wind set the luggage cart he was utilizing in motion. The luggage cart struck him on his right side, causing him to fall to the ground. The injuries he sustained were serious. Estep was insured under a Virginia personal automobile policy, issued by USAA, which included medical benefits coverage. Estep's medical bills totaled $123,989.07, and he incurred expenses totaling $71,813.27.

Estep filed a complaint against USAA for $30,000 for his medical expenses. He alleged that USAA failed to comply with the terms of his automobile policy when it refused to pay his medical expenses. USAA filed an answer, including its defenses. After engaging in discovery, USAA filed a motion for summary judgment and a brief in support thereof. Estep filed a brief in opposition to the motion for summary judgment. Estep also filed a "Brief in Support of Plaintiff Being Afforded Medical Expense Benefits Coverage for the Subject Accident" which was treated as a motion for summary judgment. USAA filed a response to Estep's brief.

After hearing the parties' arguments and reviewing their briefs, the circuit court denied USAA's motion for summary judgment and ordered that Estep would "recover and have judgment" against USAA in the amount of $30,000, plus interest and costs. The circuit court entered an order memorializing its ruling, and USAA timely noted its appeal.

On appeal, USAA maintains that there was no coverage because (1) Estep's injuries did not "ar[i]se out of the ownership, maintenance, or use of a motor vehicle" and (2) Estep was not "in or upon, entering, or alighting from" the vehicle when he was struck. We disagree on both fronts.

ANALYSIS

Where, as here, "[t]he dispositive issue[s]" on appeal were "decided by the circuit court based on stipulated facts and involve[] the interpretation of a written contract, we apply a de novo standard of review." *Christy v. Mercury Cas. Co.*, 283 Va. 542, 546 (2012); *see also Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 87 (2021) ("Alleged errors involving statutory interpretation or application present questions of law that we review de novo on appeal."). "Similarly, issues of statutory interpretation and the interpretation of insurance contracts present questions of law subject to de novo review [by appellate courts]." *GEICO Advantage Ins. Co. v. Miles*, ___ Va. ___, ___ (Dec. 1, 2022). We determine de novo not only what contractual terms mean, but also "how those terms apply to the facts of the case." *Bratton v. Selective Ins. Co. of America*, 290 Va. 314, 329 (2015) (quoting *Spectra-4, LLP v. Uniwest Commercial Realty, Inc.*, 290 Va. 36, 43 (2015)).

Estep's insurance policy with USAA mirrors in substance Code § 38.2-2201(A) which governs medical expense benefits coverage in Virginia. The statute provides, in pertinent part:

> A. Upon request of an insured, each insurer licensed in this Commonwealth issuing or delivering any policy or contract of bodily injury or property damage liability insurance covering liability arising from the ownership, maintenance or use of any motor vehicle shall provide on payment of the premium, as a minimum coverage (i) to persons occupying the insured motor vehicle; and (ii) to the named insured and, while resident of the named insured's household, the spouse and relatives of the named insured while in or upon, entering or alighting from or through being struck by a motor vehicle while not occupying a motor vehicle, the following health care and disability benefits for each accident:
>
> 1. All reasonable and necessary expenses for medical . . . services . . . resulting from the accident . . . .

Code § 38.2-2201(A) (emphasis added).

- 3 -

Estep's USAA policy provides that it will pay out "medical expense benefits to an insured who sustains bodily injury . . . [which] must be caused by an accident *arising out of the ownership, maintenance or use of a motor vehicle as a motor vehicle*." (Emphasis added). An "insured" is "you or any family member who sustains bodily injury while occupying . . . a motor vehicle[,]" and "occupying" means "in, upon, or getting in, on, out or off."

For Estep to recover medical expense benefits under his USAA policy and Code § 38.2-2201(A), his injuries must have (1) "aris[en] out of the ownership, maintenance or use of a motor vehicle as a motor vehicle," and (2) occurred while he was "in or upon, entering or alighting from" or otherwise "occupying" his car.

### I.  The Circuit Court Properly Found that Estep was "Using" his Car "as a Car" When he was Injured

Estep argues his accident arose out of the use of his car "as a car" because he suffered his injuries while he was packing the vehicle before an imminent road trip. USAA in turn claims the accident did not arise out of "use" of the car because there was no causal relationship between loading the trunk with bags and the luggage cart hitting him, as Estep could have been struck by the runaway luggage cart regardless of his proximity to the vehicle.

### A.  Law Relating to Use of a Vehicle

The Supreme Court has acknowledged that discerning bright-line rules is impossible in this kind of fact intensive case, but it has imparted rules to guide us in "[c]ases involving the terms 'use' and 'occupancy' in automobile insurance policies . . . ." *See Simpson v. Va. Mun. Liab. Pool*, 279 Va. 694, 699 (2010). "To [d]etermine when 'use' and 'occupancy' begin and end . . . 'the critical inquiry is whether there was a causal relationship between the incident and the employment of the insured vehicle *as a vehicle*.'" *Id.* (quoting *Slagle v. Hartford Ins. Co.*, 267 Va. 629, 636 (2004)). "Although the vehicle's use 'need not be the direct, proximate cause of the injury,' in the strict legal sense, there must be a causal connection between the accident

- 4 -

and the use of the vehicle as a vehicle." *Corriveau ex rel. Ballagh v. State Farm Mut. Auto. Ins. Co.*, 298 Va. 273, 278 (2019) (quoting *State Farm Mut. Auto. Ins. Co. v. Powell*, 227 Va. 492, 500 (1984)). "Actual use of the vehicle as a vehicle is not restricted to its transportation function." *Bratton*, 290 Va. at 329 (quoting *Slagle*, 267 Va. at 636).

Moreover, the accident "cannot be 'merely incidental or tangential[]'" to the use of the vehicle. *Corriveau*, 298 Va. at 278 (quoting *Erie Ins. Co. Exch. v. Jones*, 248 Va. 437, 443 (1994)). And an injury does not arise out of use of a car when the accident is connected to a vehicle "only by a chronological sequence of events[]" but "never one within the intendment of the parties to these insurance contracts." *Jones*, 248 Va. at 443.[1]

To that end, we give "consideration . . . to the intention of the parties to the insurance agreement in determining the scope of the coverage afforded." *Powell*, 227 Va. at 500; *see also Simpson*, 279 Va. at 699 ("Thus, the natural and ordinary purpose of automobile insurance, objectively and reasonably within the contemplation of the parties to the insurance contract at its inception, must be taken into consideration when determining the scope of the coverage."). A "resulting injury does not arise out of the 'use' of the . . . vehicle as a vehicle" when the "vehicle is employed in a manner foreign to its designed purpose . . . ." *Fireman's Fund Ins. Co. v. Sleigh*, 267 Va. 768, 771-72 (2004) (interpreting the same language in the uninsured vehicle context).

---

[1] In *Jones* the Supreme Court explained that this inquiry is not a "but-for analysis." 248 Va. at 441 (arguments that the injury would not have occurred but for the operation of a car are not sufficient to establish coverage).

B. There was a Tangible Nexus Between the Accident and Estep's Use of the Car as a Vehicle

1. Loading a Trunk with Luggage is a Legitimate and Expected Use of a Vehicle

We agree with the circuit court that there was a tangible nexus between the luggage cart knocking down Estep and his use of the motor vehicle as a vehicle. "[A] causal relationship [exists] between the accident and [victim's] use of the vehicle as a vehicle[]" when the victim "us[es] the vehicle's equipment to accomplish his mission[] with the immediate intent to drive the vehicle" after using the equipment. *Edwards v. Gov't Emps. Ins. Co.*, 256 Va. 128, 133 (1998) (holding that the nonowner of the car was using the car for insurance purposes while he was injured replacing a tire). Here, Estep contends that his accident occurred while he was loading his car with luggage, which was part of a greater mission of returning home to Chesapeake with that luggage.

Simply put, transporting luggage is a valid and expected use of a vehicle, and one cannot transport the baggage without first packing the vehicle. Numerous cases from other jurisdictions have reached the conclusion that transporting cargo is germane to a car's use. *See, e.g.*, *Il. Farmers Ins. Co. v. Marvin*, 707 N.W.2d 747, 749, 757 (Minn. Ct. App. 2006) (reasoning that a person who had been "loading objects into the back of a vehicle and the upper half of her body had just been inside the vehicle mere moments before" an accident "was in the process of using the vehicle as a motor vehicle"); *Blasing v. Zurich Am. Ins. Co.*, 850 N.W.2d 138, 145-46 (Wis. 2014) (loading a pickup truck with lumber was "reasonably contemplated by the insured and insurer because it is consistent with the ordinary transportation of persons and goods inherent in the purpose of the pickup truck"); *Burlington Ins. Co. v. Northland Ins. Co.*, 766 F. Supp. 2d 515, 525 (D.N.J. 2011) ("Generally, a person injured in the process of unloading cargo from a

vehicle is considered a user of the vehicle and entitled to coverage under an automobile policy because of the 'substantial nexus between the injury and the use of the vehicle.'").

While loading luggage is a legitimate and expected use of a vehicle, we still must find a requisite nexus to the accident for coverage to apply.

> 2. The Circuit Court Properly Rejected USAA's Claim that the Vehicle's Use as a Vehicle was Tangential to the Accident and that the Car was Simply the Situs of a Non-Transportation Related Incident

USAA argues that "under principles applicable in the Commonwealth, if the . . . incident could have occurred regardless of the vehicle there is no coverage." *Corriveau*, 298 Va. at 282. In other words, where the vehicle is merely the situs of an incident that is wholly independent of the vehicle's use as a vehicle—it is likely that the contracting parties did not contemplate that coverage would apply. For example, in *Corriveau*, the injured party was harmed by an assault that occurred on a school bus; but the court observed that the bus was merely "a situs for the assault, a use wholly separate from the intended use as a means of transportation." *Id.* at 280. The court concluded that an assault can happen anywhere. *Id.*

Similarly, in *Doe v. State Farm Fire and Cas. Co.*, 878 F. Supp. 862, 865-67 (E.D. Va. 1995), the federal court applied Virginia law and "determined that the injuries suffered by the victim of an abduction and sexual assault within a stolen vehicle did not arise from the use of that vehicle as a means of transportation." *Corriveau*, 298 Va. at 277 (summarizing *Doe*).[2]

---

[2] The *Corriveau* decision further reasoned:

> The following hypothetical noted by the Eastern District in *Doe*, applies with equal force to our facts as it aptly demonstrates the limits of the coverage applied to the "use" of the vehicle:

> "two passengers who come to blows over an argument in the back seat of an automobile can hardly claim that their resulting injuries arose out of the vehicle's use as a vehicle. In such circumstances, the only relation of the injury to the vehicle is that the latter served

Thus, the vehicle, again, was merely the situs of the attack, and the attack was not related to the use of the vehicle as a vehicle.

The logic of these "situs" cases applies in full force to various insurance scenarios in which a gun accidentally discharges and injures someone around or in a vehicle. Firing a gun around a car is not an inherent use of a car. Similarly, accidental discharge of a gun could happen anywhere, and an insurance company generally is not liable under an auto policy merely because that discharge happens to occur near a car. *See, e.g.*, *Powell*, 227 Va. at 501 (holding that the accidental discharge of a rifle stored in a truck that killed a victim outside of the truck did not arise out of the use of a vehicle because "the truck merely was the situs for a social gathering"). In *Erie Insurance Co. Exchange v. Jones*, a motorist exited his stopped vehicle with a rifle and used it to tap on the window of another vehicle that had been following closely behind him. 248 Va. at 438-39. The rifle accidently discharged, injuring the driver and killing a passenger. *Id.* at 439. The administratrix of the deceased passenger sought insurance coverage and argued that the "entire accident centered around two vehicles and clearly they were being used . . . at the time of [the] accident." *Id.* Rejecting this argument, the Supreme Court reasoned that the proximate cause of the accident was "related to the use of . . . [the] vehicle only by a chronological sequence of events." *Id.* at 443. Claimed insurance losses "are not vehicle-caused when the proximate cause is *merely incidental or tangential* to the ownership, maintenance, or use of the vehicle." *Id.* at 442-43 (emphasis added).[3]

---

as [the] situs or enclosure for the assault, no different from an apartment, an alley, or [an] elevator."

*Corriveau*, 298 Va. at 280 (quoting *Doe*, 878 F. Supp. at 864).

[3] Notably, the *Corriveau* decision overruled *State Farm Mut. Auto Ins. Co. v. Rice*, 239 Va. 646 (1990), which involved a shooting during a hunting trip. 298 Va. at 282. When one of the hunters removed his rifle from their vehicle, it discharged and struck the other man, who had left their Jeep and was walking up a nearby ridge. *Rice*, 239 Va. at 649. The original *Rice*

In addition to these accidental gun discharge scenarios, insurance cases also arise from intentional gun use involving vehicles. *See Lexie v. State Farm Mut. Auto Ins.*, 251 Va. 390 (1996) (drive-by shooting from a vehicle); *Travelers Ins. Co. v. LaClair*, 250 Va. 368 (1995) (shooting from behind a car door which was being used as a shield). In both *Lexie* and *LaClair*, uninsured motorist coverage was denied because intentional shootings from a vehicle did not constitute use of the vehicle as a vehicle. Citing these cases, the Supreme Court explained in *Fireman's Fund v. Sleigh*, (under an uninsured motorist analysis), that where a "vehicle is employed in a manner foreign to its designed purpose," awarding coverage is improper where "the resulting injury does not arise out of the 'use' of the . . . vehicle as a vehicle, but instead arises from its employment in a manner contemplated neither by its designers, its manufacturer, nor the parties to the insurance contract." 267 Va. at 771-72.

USAA relies upon cases involving guns and assaults to suggest that Estep's car was simply a "situs" of an injury unrelated to the use of his car as a car. Under this logic, USAA claims the luggage cart, once in motion, could have struck the insured "anywhere." We cannot accept this core premise of USAA's argument. Under the facts of this case, Estep's car was more than just the situs of the injury. Estep was using the insured vehicle for an intended purpose at the time of the accident—and the cart was present to assist in the intended use. Accordingly, this was not an incident unrelated to the vehicle that could have happened anywhere—it was a car-loading accident that occurred in a car-loading area and involved car-loading equipment. And it occurred in connection with an imminent drive home from a hotel. Put another way, assaults such as those that occurred in *Corriveau* and *Doe*, and gun

decision awarded coverage because "the accident arose out of the use of the Jeep." *Id.* In overturning this logic, the *Corriveau* Court explained that the shooting in *Rice* actually showed that "human conduct wholly independent of the operation or use of the vehicle caused the rifle to discharge" and the incident occurred "regardless of the vehicle." 298 Va. at 282. Arguably, the victim also was not in close proximity to the vehicle—or "vehicle oriented"—when shot.

discharges such as occurred in *Jones*, *Powell*, and *LaClair*, generally occur "wholly independent of the operation or use of the vehicle." *Corriveau*, 298 Va. at 282. By contrast, loading a vehicle for an imminent departure is not "wholly independent" of the transportation function or use of the car as a car.

In our view, there was a causal relationship between the incident and the employment of the insured vehicle *as a vehicle*. Packing a car is conduct that the car's designers, manufacturer, and the parties to the insurance contract would naturally foresee. *See Simpson*, 279 Va. at 699. When he was struck by the cart, Estep was not using the vehicle "in a manner foreign to its designed purpose." *Sleigh*, 267 Va. at 771. Any insurance company would expect that an auto policy holder would use a car to transport luggage and would know the vehicle must be packed before the anticipated transit could proceed.[4]

Having concluded that Estep's injuries arose out of the use of the vehicle, we next consider whether he was "in or upon, entering or alighting from" or otherwise "occupying" his motor vehicle when the accident occurred.

## II. The Circuit Court Properly Concluded that Estep was Occupying the Motor Vehicle

Both Estep's USAA policy and Code § 38.2-2201(A) require Estep to have been "in or upon," entering or alighting from, or otherwise "occupying" his car during the injury in order for medical benefits to extend.

---

[4] USAA further argues that an independent force like a gust of wind put the cart into motion and that this, too, could have happened anywhere. Insurable events often arise from unexpected forces. Consider instead that Estep was driving out of the lot and the offending luggage cart rolled in front of his car, causing him to swerve into a pole and resulting in injury. USAA's policy would surely cover those medical expenses because he was driving the car. While driving a car may be the primary use, loading it with objects to bring home is another legitimate use. More importantly, it is a use that is properly contemplated by the policy.

Again, based on the fact-specific nature of these disputes, a lack of bright-line rules govern the definition of "occupancy" in our case law. *See Simpson*, 279 Va. at 699. Nonetheless, there are various guiding principles. Here, both parties rely heavily on *Pennsylvania National Mutual Casualty Insurance Co. v. Bristow*, 207 Va. 381 (1966), to support their positions. In *Bristow*, the plaintiff came upon a stalled car on the side of the road. While he was leaning under the popped hood of the car, inspecting its motor, another car hit the stalled car, injuring the Good Samaritan. *Id.* at 382. Considering whether the uninsured motorist victim was covered, the Supreme Court analyzed a policy that provided benefits for those "occupying an insured automobile[,]" which "means 'in or upon or entering into or alighting from.'" *Id.* at 383. The Court explained that "a person may be said to be 'upon' a vehicle when he is in a status where he is not actually 'in,' or is not in the act of 'entering into or alighting from,' the vehicle" so long as the victim's "connection therewith immediately relates to his 'occupying' it." *Id.* at 385. Applying that definition, the *Bristow* Court held that the victim was not covered because "[h]e had not occupied the . . . vehicle . . . nor did he intend to occupy it. His touching of the vehicle was merely incidental to his kindly act as a Good Samaritan." *Id. Bristow*'s progeny inject a physical proximity requirement into the analysis because "the word 'occupying' denotes a 'physical presence in or on a place or object.'" *Edwards*, 256 Va. at 135 (quoting *Stern v. Cincinnati Ins. Co.*, 252 Va. 307, 311 (1996)).[5]

Unlike the injured party in *Bristow* who came upon a car he did not own and never intended to use, Estep's actions of loading his car with luggage and his plans to promptly leave the hotel were "relate[d] to his 'occupying' it." *Bristow*, 207 Va. at 385. Estep's actions also

---

[5] In *Edwards*, a nonowner of a car who had not been inside the car other than to grab the spare tire was injured while changing the tire. *Edwards*, 256 Va. at 130. The Court held the victim's "act of attempting to replace the tire on the insured vehicle was not an act immediately related to occupancy[,]" and despite his intent to eventually occupy the car, his "actions did not constitute a physical presence in or on the insured vehicle." *Id.* at 135.

satisfy the physical proximity requirement, as his chest and head were inside the car. Nor was his contact with the car or its contents "merely incidental" to an act unrelated to occupying the car as was the case in *Bristow* and *Edwards*. *Id.* Bending into the car to load luggage was related to his intent to get in the car and drive himself and his belongings back home.

Estep's physical presence halfway inside his car while engaging in conduct consistent with his occupancy of the car is sufficient to trigger coverage under his policy language. Estep was "upon" the vehicle as he handled luggage inside it and placed his upper body within the vehicle. *See Rosado v. Hartford Fire Ins. Co.*, 897 N.Y.S.2d 173 (N.Y. App. Div. 2010) (delivery man struck while rearranging empty cases of beer in his truck was "upon" the vehicle); *State Farm Mut. Auto Ins. v. Cookinham*, 604 A.2d 563 (N.H. 1992) (passenger struck by another driver while leaning against vehicle waiting for her ride home was "upon" the struck vehicle).

We also find the Supreme Court's decision in *Bratton*, 290 Va. at 324, instructive on the question of occupancy. While that case focused on the "getting out of" aspects of "occupancy," its emphasis on weighing the surrounding circumstances is relevant here:

> [A]nalysis of whether an individual is "getting out of" a vehicle must consider the totality of the circumstances—including the individual's proximity to the vehicle, the duration of time during which the individual acts, the particular actions taken, the situation in which the individual is acting, the motivation for the individual's actions if any can be ascertained, and the purpose of the policy's coverage—to determine whether the individual was "getting out of" the vehicle. And if those circumstances establish that the individual was no longer "vehicle-oriented," then the act of "getting out of" the vehicle was complete.

*Id.* at 325-26. In *Bratton*, the victim was a truck driver who, in the span of 30 seconds, dumped asphalt, exited the front cab, closed the door behind him, and walked "at least 9 feet to the rear tires[]" to ensure the asphalt dump went smoothly when the accident occurred. *Id.* at 328. The Court held that the driver "was still vehicle-oriented and in the process of 'getting out of' the

- 12 -

dump truck" at the time of the collision. *Id.* For that reason, the driver was still "occupying" the motor vehicle for insurance purposes—and coverage was awarded. *Id.*[6]

Similarly, here, Estep's actions at the time of the accident were focused on the use of his vehicle for an intended purpose. At the time of impact, Estep was loading bags inside the vehicle's enclosed trunk space with the intent of driving himself and his family's belongings home. In reviewing the unique facts of this case, we find that the policy term "upon" is broad enough to encompass leaning into the interior of the vehicle's trunk from the waist up and handling baggage therein. We agree with the trial court's conclusion that Estep was "occupying" his car under his USAA policy when he was injured by the rolling luggage cart.

CONCLUSION

A central purpose of car insurance policies like the one Estep paid for with USAA is to provide medical benefits for injuries that occur while a policy holder is occupying his car and using it for one of its intended purposes. We affirm the circuit court's decision that Estep was "using" and "occupying" his vehicle when he was injured. We further uphold the circuit court's

---

[6] USAA argues that *Bratton* involves a "specialty" vehicle and, thus, is not relevant here. The specialty vehicle discussion in that case, however, focused on a second construction vehicle providing lighting and a warning to oncoming drivers of the construction work. The "occupancy" analysis centered on the meaning of "getting out of." The factors that are discussed as relevant to the "vehicle oriented" standard would apply with respect to any vehicle. USAA suggests that Estep was not really "vehicle oriented" because he planned to return the luggage cart to the hotel lobby before driving home. If a tree limb had fallen on the insured while he walked the luggage cart to the lobby 20 feet from the car, the "occupancy" analysis here might be different. But that did not happen. Estep was struck while leaning "upon" the vehicle and while he was partially inside it, arranging baggage within it. He was planning to drive away from the hotel and "preparing to leave" when he was injured. Because we conclude that Estep was "upon" the vehicle at the time of the accident, and occupying it, we need not reach the question of whether he was also "getting in" the vehicle by placing his belongings inside it for imminent departure. *See, e.g.*, *Bratton*, 290 Va. at 340 (Kelsey, J., dissenting) (discussing unloading groceries and children as a consideration in "getting out of" a vehicle under a "common sense" analysis).

ruling awarding Estep coverage under the USAA policy in the amount of $30,000 in medical

benefits, plus interest and costs.

*Affirmed.*

O'Brien, J., dissenting.

I agree with the majority that Estep was occupying the vehicle at the time of his injury, but because his injuries did not result from an accident arising out of the use of his vehicle, I respectfully dissent from the majority's ruling affirming summary judgment for Estep.

Medical coverage under Code § 38.2-2201(A) and the policy at issue here both require not only that Estep's injuries occurred while he was "occupying" the vehicle when he was injured, but also that they were caused by an accident "arising" out of the "ownership, maintenance[,] or use" of the vehicle. In my view, the circumstances of the accident do not establish the requisite causal relationship "between the incident and the employment of the insured vehicle as a vehicle." *Corriveau ex rel. Ballagh v. State Farm Mut. Auto. Ins. Co.*, 298 Va. 273, 278 (2019) (quoting *Simpson v. Va. Mun. Liab. Pool*, 279 Va. 694, 699 (2010)). As a result, Estep's injuries were not caused by an accident arising out of his use of the vehicle.

The causal relationship between the vehicle's use "as a means of transportation" and the accident must be more than just a "chronological sequence of events"—i.e., there must be more than just "but for" causation. *Id.* at 282; *Erie Ins. Co. Exch. v. Jones*, 248 Va. 437, 441 (1994). Claimed losses "are not vehicle-caused when the proximate cause is *merely incidental or tangential* to the ownership, maintenance, or use of the vehicle." *Jones*, 248 Va. at 442-43 (emphasis added) (denying coverage for a fatality caused by the accidental discharge of a rifle used to tap on the window of another vehicle).

Here, the cause of the Estep's accident—the wind blowing the luggage cart into him— was "merely incidental or tangential" to his use of the vehicle. *Id.* at 443. The simple fact that Estep was loading the vehicle when he was injured does not necessarily render the accident "vehicle-caused." *Id.* at 442. The wind blowing the luggage cart into Estep is more properly characterized as the "the intervention of an[] event unrelated to the use of the vehicle," such as

accidental discharge of the rifle in *Jones*.  *Id.* at 441 (quoting *Kish v. Cent. Nat'l Ins. Grp. of Omaha*, 424 N.E.2d 288, 294 (Ohio 1981)).  Although Estep might not have been injured but for his loading luggage into the trunk of the vehicle, *see id.*, the requisite causal relationship is not established when the cause of the accident was an unlucky happenstance of nature—an external event not intrinsic to the use of the vehicle.

The Supreme Court's ruling in *Corriveau* further supports this conclusion.  298 Va. at 282.  *Corriveau* overruled *State Farm Mut. Auto. Ins. Co. v. Rice*, 239 Va. 646 (1990), which was a decision with facts analogous to this case.  *Id.*  In *Rice*, the Supreme Court held that injuries incurred from the accidental discharge of a rifle as it was being removed from the front seat of a Jeep arose out of the use of a vehicle.  239 Va. at 647-48, 650.  The Court reasoned that the "specific enterprise associated with the use of the Jeep was to transport . . . the men and their equipment to [a] hunting site," and because the rifle's owner left a door open during the incident, he had "not completed his use of the Jeep when the rifle discharged."  *Id.* at 649-50.  Thus, a "sufficient nexus existed . . . between the accident and employment of the Jeep as a vehicle."  *Id.* at 650.

*Corriveau* explicitly rejected this rationale, explaining that "the circumstances in *Rice* merely showed that human conduct wholly independent of the operation or use of the vehicle caused the rifle to discharge."  298 Va. at 282.  The Court further stated, "Today we clarify that, under principles applicable in the Commonwealth, if the discharge or incident could have occurred regardless of the vehicle there is no coverage."  *Id.*

Estep's argument that his "enterprise" was to "transport the Esteps and their luggage" home parallels the now-rejected rationale in *Rice* and cannot withstand the scrutiny of the *Corriveau* analysis.  *See id.*  As in *Corriveau*, the cause of the accident—a gust of wind—was "wholly independent of the operation or use of the vehicle[,]" and "[n]othing that caused

[Estep's] injuries were 'implements of the vehicle. They were all independent of the vehicle itself.'" *Id.* at 280, 282 (quoting the circuit court's rationale). Indeed, the "incident could have occurred regardless of [Estep's] vehicle." *Id.* at 282. The wind could have knocked the luggage cart into Estep at any other time; he just happened to be near the vehicle when it did.

The majority emphasizes the fact that Estep was not using the car "in a manner foreign to its designed purpose," quoting *Fireman's Fund Insurance Co. v. Sleigh*, 267 Va. 768, 771 (2004). I do not disagree with the majority's conclusion that "transporting luggage is a valid and expected use of a vehicle." But loading luggage is not essential to a vehicle's use. *See Edwards v. Gov't Emps. Ins. Co.*, 256 Va. 128, 133 (1998). In *Edwards*, the Supreme Court found a causal relationship between an accident and the use of a vehicle when Edwards was injured while changing a flat tire. *Id.* The Court determined that changing the tire was "a transaction essential to the use of the insured vehicle" and Edwards "was using the insured vehicle's equipment at the time of the accident to perform his mission . . . to drive the car to a service station." *Id.* But unlike changing a flat tire, loading luggage into a vehicle is not "essential" to its use. *Edwards* relied on the fact that the motorist would not have been able to drive the vehicle without first changing the flat tire; Estep, by contrast, could have driven the car with or without the luggage. *See id.* ("An integral part of the mission [to drive the vehicle to a service station] required use of the jack to remove the flat tire and to place the spare tire on the vehicle.").

For these reasons, Estep's injures were not caused by an accident arising out of the use of his vehicle, and controlling authority from this Commonwealth compels a different result from that reached by the majority. Therefore, I must respectfully dissent.